COX et al., Respondents, v. ST. LOUIS, MEMPHIS & SOUTHEASTERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, January 22, 1907.

1. HUSBAND AND WIFE: Trespass: Estate in Entirety: Action by Wife. Under sections 4340 and 4335, Revised Statutes 1899, where real estate was held by a husband and wife in their joint names, the wife could sue in her own name for the whole damage done to the freehold by a trespasser who entered and disturbed the freehold without her consent.

2. ――――: ――――: ――――: Parties. Where a trespass was committed upon land owned by a husband and wife in their joint names, the wife could recover the entire damage, though her husband was joined with her as a party plaintiff and though he consented to the trespass but without her authority.

3. PRACTICE: Treble Damages: Discretion of Trial Court. After a jury has rendered a verdict in an action for trespass, assessing the actual damage to plaintiff, the court in case coming under section 4572, R. S. 1899, may consider the evidence and pass upon the issue of probable cause to determine whether the damages should be trebled as authorized by statute or not; and when the trial court's finding against the existence of a probable cause, on the part of the defendant, to believe he had a right to enter upon the land, is supported by substantial evidence, the finding will not be disturbed.

Appeal from Butler Circuit Court.—*Hon. J. C. Shepard,* Judge.

AFFIRMED.

*L. F. Parker* and *James Orchard* for appellant.

The court erred in giving instruction number two of its own motion, for the reason that it is a comment on the evidence, and ignores all the evidence except the evidence of Hawkins and Sullivan for defendant, and Cox for the plaintiff, and points out certain testimony, which the court should refrain from doing. Rose v. Spies, 44 Mo. 20; Bank v. Currie, 44 Mo. 92; McClure v. Ritchie, 30 Mo. App. 445; Copp v. Hardy, 32 Mo. App. 588; McFadin v. Catron, 120 Mo. 274.

*D. W. Hill* and *E. R. Lentz* for respondent.

STATEMENT.—The facts of this case are fully stated in the report of the decision given on a former appeal. [111 Mo. App. 394.] As the evidence in the present record is not materially different from that shown in the previous record, it will be unnecessary to recite the facts at length; but some statement should be given to assist the reader in understanding the questions raised. The action is one on the statute allowing treble damages to be awarded for a malicious trespass. The trespass alleged was that defendant entered on plaintiffs' land against their will and excavated and removed some 3,500 carloads of sand, soil and gravel. The title to the land was vested in the two plaintiffs. In the answer defendant denied the averments of the petition and pleaded that one I. M. Dittenhoefer was the original contractor for building and completing defendant's railroad; that said Dittenhoefer through his subcontractors and agents, bought from plaintiffs the privilege of entering on their land and taking sand therefrom at the rate of

$20 an acre; that Dittenhoefer and his said subcontractors and agents took what sand was taken from plaintiffs' land and paid plaintiffs for it, except a balance which had been tendered; that neither defendant nor its agents or servants entered on the land or took any sand therefrom. The pleadings are exactly like they were before.

The title to the land was vested in the two plaintiffs as an estate of entirety by virtue of a deed executed in 1892. G. H. Sullivan, who was Superintendent of Maintenance of the Right of Way of defendant company, had entered into an agreement with G. T. Cox, one of the plaintiffs, permitting the railroad company to procure sand from the farm. The company needed considerable sand in the construction of its road and a sandbank on plaintiffs' farm had attracted Sullivan's attention. The case turns on the terms of the agreement made between Sullivan and Cox, as to which there was a radical contradiction in the testimony. If Cox's version is true, the defendant company was a trespasser in taking the sand; whereas, if Sullivan's version is true, it acted within its rights. Cox's statement of the agreement was that in consideration of the railway company building a depot on his farm, he agreed that the company might take sand from a strip embracing two acres along the right of way, but the company excavated more than 1,200 feet from the right of way. He denied having authority to agree for Mrs. Cox. Sullivan's statement was that Cox agreed the company might take all the sand it needed from any part of the farm at $20 per acre. Plaintiffs' farm contained eighty acres. This diagram will show the long strip parallel with the right of way from which Cox swore he agreed the company might get sand, provided it would build a depot on his farm; also the tract from which the company took sand:

The following instruction was given for plaintiffs:

"The court instructs the jury that if you believe and find from the evidence that the defendant, by its servants, agents, employees and officers, without the consent or authority of Mrs. S. J. Cox, and without the consent of C. G. Cox, or either of them, on or about the 25th day of April, 1902, entered upon their farm, and between that date and the twenty-fifth day of July, 1902, without such consent or authority, dug up, took and carried away from said farm, sand, soil and gravel, then and there being on said land, then your verdict must be for the plaintiffs and in such sum as you may believe from the evidence the reasonable market value, for any purpose,

of such sand, soil and gravel to have been at the place where taken from, not to exceed $1,500."

The court, on its own motion, gave this instruction:

"The court instructs the jury that if you find and believe from the evidence in this case that G. T. Cox was authorized to act for his wife, and made the contract testified to by Sullivan and Johnson, and that the defendant entered upon said lands under said contract and took the sand, it was not a trespasser at all and is liable for the contract price of the sand so taken only, and that this is true notwithstanding you may believe and find from the evidence that plaintiff notified defendant to get off the premises after it had begun work and you should find for the plaintiffs in the sum of twenty dollars per acre for the amount of acres taken; and on the other hand, if you believe the contract was as testified to by Mr. Cox, that he agreed to take twenty dollars per acre provided a depot was built there; then the defendant was a trespasser, and your verdict should be for the plaintiff in such sum as you believe to have been the market value of the sand taken as in instruction numbered one."

The following instructions were asked by the defendant:

"The court instructs the jury that the land from which the sand was taken is in the name of the plaintiff, G. T. Cox and S. J. Cox, husband and wife, and if you believe and find from the evidence that Cox sold the sand to I. M. Dittenhoefer, or the defendant, for $20 per acre, and that his wife, S. J. Cox, consented and acquiesced therein, then they would not be entitled to recover in any sum exceeding the amount contracted for; and as to whether his wife S. J. Cox consented and acquiesced therein is a question that you may determine from all the facts and circumstances surrounding the case, and need not be proved by direct and positive testimony.

"The court instructs the jury that if you find from the evidence that plaintiff G. T. Cox, at any time discussed the price that he was getting for the land in the presence of his wife, Mrs. S. J. Cox, and stated the price he was to receive; and that she, the said S. J. Cox interposed no objections or remained silent during said conversation; that is a fact that the jury may take into consideration in determining whether G. T. Cox was acting as the agent of his wife or not and whether she consented and acquiesced in the sale of said land to the defendant or any other person."

Both of those instructions were refused as asked and given in a modified form. The first one was modified by striking out the words "I. M. Dittenhoefer or" and interlining "G. H. Sullivan, agent of." The second instruction was modified by striking out the words "or any other person" at the close of the last sentence.

The following instructions were asked by defendant and refused: .

"The court instructs the jury that if you find from the evidence that the plaintiffs agreed with I. M. Dittenhoefer, the original contractor, of defendant, or either of them, or their agents, to sell the sand at the rate of $20 per acre, and that they entered under that contract and removed the sand, then that is all they could obtain judgment for, and if you find such to be the facts, you will ascertain how many acres of sand was taken and return a verdict for whatever amount you may find to be due on account thereof at the rate of $20 per acre.

"The court instructs the jury that if the defendant or its agents or servants entered plaintiffs' land under any kind of a contract, or with the consent of the plaintiff, then the defendant would not be guilty of trespass, and you will return a verdict for the defendant.

"The court instructs the jury that this is a suit for trespass, and if you find or believe from the evidence that defendant entered plaintiffs' lands under a verbal

contract, then no matter what the verbal contract was, plaintiff cannot recover in this case, and you must find a verdict for the defendant; and this is the law of this case even if the defendant has violated the terms of the contract, if there was one.

"The court instructs the jury that if you find that I. M. Dittenhoefer was the contractor for the building of the railroad, and his subcontractors or employees entered plaintiffs' land, either under or without an agreement, defendant is not liable, and you should find a verdict for the defendant.

"The court instructs the jury that although you may believe that I. M. Dittenhoefer, the original contractor, by or through his subcontractors and employees, entered the plaintiffs' land either with or without a contract, and took and removed sand therefrom, then the defendant would not be liable, unless they have shown the defendant was aiding and abetting and instructed said I. M. Dittenhoefer to remove the sand, and this is true, even though you might find from the evidence that G. H. Sullivan was the engineer and superintendent of maintenance of way."

The jury found the issues for the plaintiffs and assessed their damages at $800. Thereupon plaintiff moved the court to enter judgment for treble damages. On this motion the defendant company asked this declaration of law, which the court gave:

"The court declares the law to be that if the defendant went on the land of plaintiffs and removed the sand, believing that it was its own, or that it believed it had permission to enter and take the sand, then it would not be a willful trespasser, and would only be liable for single damages, and if the court finds such facts to exist, the court will refuse to treble the damages."

The defendant requested the following declaration, which the court refused:

"The court declares the law to be that under the

evidence in this case and the verdict of the jury that the court is not authorized to treble the damages in this cause."

Thereupon the court rendered judgment against the defendant for $2,400, or three times the amount of damages assessed by the jury.

GOODE, J. (after stating the facts—1. As to the special plea in bar that the entry on plaintiff's land and removal of the sand therefrom was by Dittenhoefer under a contract by which plaintiffs gave him the right to do so, suffice to say that there was no proof to sustain this defense. Sullivan swore the arrangement with Cox for sand was made in behalf of Dittenhoefer and not of the railway company; but there is no testimony that Dittenhoefer removed the sand in controversy. The evidence on that issue shows without conflict that the railway company took or was a party, at least, to the taking of the sand. Whatever Dittenhoefer did in the matter was in connection with the Railway Company's officials and was done to assist in the construction of the roadbed. In fact, though Dittenhoefer was a contractor for the construction of the railroad through plaintiffs' land, he unquestionably took sand from plaintiffs' farm outside the right of way to surface the roadbed, pursuant to an agreement which Sullivan assumed to have made with plaintiffs.

2. Complaint is made of the instruction to the jury, given at the instance of the plaintiffs, on the ground that it made the defendant company a trespasser if it entered on the plaintiffs' land and removed sand without first obtaining the consent of both Cox and his wife; whereas it is said that Cox alone, as head of the family and in possession, would have the right to grant permission for defendant to enter and thereby prevent its conduct from being a trespass. An instruction of nearly the same language was before us on the first appeal. The one

now before us will certainly bear the interpretation that if defendant entered without the consent of either Cox or his wife, it was guilty of trespass whether that was what the court intended to say or not. Defendant's theory, as set forth in several instructions, is, that if it took the sand under any kind of a contract it was not a trespasser as against either plaintiff; a theory rejected by this court on the first appeal, when it was said, in effect, that Cox must have had some authority from his wife in order to prevent the taking from being a trespass as against her. The questions arising on the instruction under review are, first, whether or not, if Cox gave permission to take the sand without any authority from his wife, there would be a trespass against her, entitling her to recover for the entire damage and, second, whether in this action in the joint names of her and her husband, a judgment for the entire damage can be sustained if he consented to the entry but she did not. Prior to the enactment of the statute of 1889, the common law rule in regard to estates in entirety prevailed in this State; and by that rule, during coverture, the husband had the absolute control of the property and could sue in his own name for possession or in trespass for its injury. Accordingly it was held that he was the only proper and necessary party to maintain an action for possession of an estate in entirety; though probably even then she would have been a proper party to join in an action for damage to the freehold. [Peck v. Lockridge, 97 Mo. 558, 11 S. W. 246; Smith v. Dryden, 79 Mo. 106.] A change was wrought in the law of estates in entirety, as in the other estates of married women, by the alteration of what is section 4340 of the Revised Statutes of 1899 in the revision of 1889, relating to married women. After said revision that section provided that the real estate belonging to a wife should be her separate property; and by section 4335, as construed by the Supreme Court, she became entitled

to sue in her own name without joining her husband, for possession of her real property. After the amendment of the present section 4340 in 1889, it was ruled by the Supreme Court that as the wife and husband were each entitled to the entire estate when the property was held in entirety, the wife might sue in her own name in ejectment to recover the whole of such estate and the rents and profits thereof, just as she might for any other separate statutory estate. [Bains v. Bullock, 129 Mo. 117.] This being so, she is entitled to sue in her own name for the whole damage done to the freehold by a trespasser who entered and disturbed the freehold without her consent. If Cox consented for the defendant to take sand, he personally would not have a right to recover for the removal of the sand. In that case the tort was exclusively against his wife. But if she is entitled to recover the whole damage, a judgment therefor in an action by both of them would not be error prejudicial to the defendant unless it is error to join the husband with the wife in such a case. It is true she might have sued in her own name without joining him; but was it error to join him? Both sections 4335 and 546 of the Revised Statutes of 1899, provide that a wife may sue at law and in equity with or without her husband being joined as a party, and the former section has been construed to embrace actions regarding her real estate. [Arnold v. Willis, 128 Mo. 145, 30 S. W. 517.] It follows that the removal of the sand without her authority entitled her to recover the whole actual damage in an action prosecuted either in her own name or in the joint names of herself and her husband. This being so, we cannot see how the defendant will be harmed by the recovery in the present action in their joint names, as the judgment would bar any subsequent action by her or her husband. It is not asserted that defendant had direct authority from Mrs. Cox for the entry, but only that the authority came through her husband as

representing her. If he had no authority to represent her a trespass was committed, and it was not reversible error to tell the jury, in effect, that if defendant entered without the consent of both plaintiffs, it was liable in damages. It is to be borne in mind that this instruction was given on the inquiry regarding the assessment of single damages by the jury and not on the issue of whether the defendant acted without probable cause, which was determined by the court and another and independent declaration of law given.

3. The record shows that declarations were requested and given on the issue of treble damages and that the court passed on the facts relating to said issue and trebled the damages. This ruling is assigned for error, defendant contending that the evidence largely preponderated in favor of the theory that it entered under a contract. If this contention were correct, the question would arise whether the entry was under a contract which furnished probable cause for defendant to believe it owned the sand or had a right to remove it. As said above, we do not accept the proposition that any contract would suffice. However it was for the court to pass on the issue of probable cause. The practice in this State in an action founded on the statute under consideration is for the court, after hearing the evidence adduced before the jury, to treble the damages if the jury finds a verdict for the plaintiff and no probable cause appears. This matter was considered by the Supreme Court in Walther v. Walther, 26 Mo. 143, wherein it was held that whether such practice was right or wrong, it had become the settled rule in this State and left the court the judge both of the law and the fact on the question of a defendant's probable cause to believe the removal of part of the freehold was lawful. To the same effect are Rouse v. Wood, 57 Mo. App. 650; Brewster v. Link, 28 Mo. 147; Herron v. Hornback, 24 Mo. 492; Ewing v. Leeton, 17 Mo. 461; Le-

Baume v. Woolfolk, 18 Mo. 514 and Withington v. Hilderbrand, 1 Mo. 280. In Henry v. Lowe, 73 Mo. 100, it is said the burden is on the defendant to show that probable cause existed. Now in the present case, in dealing with the issue of probable cause, after the jury had returned its verdict assessing the value of the sand taken, the court, at defendant's request, declared the law to be that if defendant went on plaintiffs' land and removed the sand, believing that the sand was its own, or that it had permission to take the sand, then it would not be a willful trespasser, but liable only for single damages, and if the court found these facts existed, judgment for treble damages should not be given. This declaration shows the court accepted the defendant's theory in regard to what would be probable cause, but declined to declare that the evidence showed the existence of probable cause and found the facts against the defendant. We are not well satisfied with the finding that plaintiffs were entitled to treble damages; but there is substantial evidence on the issue and as no error of law disregarding what was decided on the former appeal has been pointed out the judgment must be affirmed. All concur.