ENGLAND-KELCH COMPANY, a corporation of the State of New
York, *vs.* THE EVENING JOURNAL COMPANY, a corporation
of the State of Delaware.

CONTRACTS—ACTIONS—SUFFICIENCY OF EVIDENCE—ABANDONMENT.

In an action to recover money paid out and services performed under a
written contract, evidence *held* sufficient to warrant the court in deciding as
a matter of law that the contract sued on was abandoned and a new contract
substituted therefor.

(*March* 23, 1914.)

Judges BOYCE and CONRAD sitting.

*Aaron Finger* for plaintiff.

*Daniel O. Hastings* for defendant.

Superior Court, New Castle County, March Term, 1914.

SUMMONS CASE (No. 80, January Term, 1913), by the Eng-
land-Kelch Company against The Evening Journal Company to
recover the amount of money paid out and for the reasonable value
of the services, alleged to have been paid and performed, under
a written contract entered into between the parties, on the
twenty-eighth day of June, A. D. 1911, as follows:

"* * * It is proposed to issue on definite dates to be fixed hereafter
in the *Evening Journal* what shall be known as the 'industrial edition' for the
State of Delaware to consist of one or more pages to be published once a
week for three consecutive weeks.

"It is understood that the party of the second part shall give the neces-
sary time and attention and assume all expenses incident to the securing of
contracts for advertisements to be published in said industrial editions,
including cost of all advertising cuts; each contract to cover a minimum
space of two inches single column, to each advertiser; with a maximum
space of two pages, the rates to be as follows: Two dollars per inch each inser-
tion; one hundred dollars per page each insertion.

"List of persons or firms to be solicited for such advertisements shall
first be submitted to and accepted by the party of the first part, and the
party of the first part cannot be bound by any contracts until they are duly
accepted by an authorized agent of the party of the first part.

"It is further agreed by the party of the first part that of the total gross
collections of money received for such advertising that said party of the
second part shall be entitled to fifty per cent. (50%) of same; it is further
agreed that all checks received in payment of such advertising shall be made
payable to the party of the first part.

"It is further agreed that when said second party signs up to two thou-
sand dollars ($2,000) worth of contracts and same have been accepted by
said first party, then said second party shall be paid by said first party twenty-

five per cent. (25%) of the amount of contracts so accepted and subsequently accepted by said first party, such amounts so paid to be deducted from the gross amount to be received and paid to said second party under the terms hereof. Such payments, however, not to be made oftener than every two weeks.

"It is agreed that for every three columns of advertising matter procured by the party of the second part, for insertion in said editions, the party of the second part will provide one column of reading matter which shall refer to some one or more of the businesses or industries so advertised, but said reading matter shall not contain the name of any person, firm or corporation engaged in any such businesses or industries.

"It is further agreed that all contracts, orders, and bills shall be made in the name of the party of the first part, and all collections shall be made by the representatives of the party of the first part, excepting in the case of prepaid contracts, said party of the second part receiving in final payment for his services and expenses incurred by him and his agents in securing such advertising, fifty per cent. (50%) of the gross receipts, less any amount which shall have been paid to the party of the second part on account of this agreement.   *   *   *"

The uncontradicted testimony disclosed that an unsuccessful canvass was thereafter made prior to sending the telegram, set forth in the opinion of the court, and that at a conference between the parties in response thereto a substituted oral agreement was entered into by which at least ten thousand dollars worth of advertisements was to be secured for an edition of the Evening Journal, to be known by the name of "Little Delaware's Bigness." The terms of the original contract as to compensation and furnishing reading matter were to remain in force. The business was never secured. A list of advertisements amounting to two thousand, nine hundred and thirty-four dollars, was turned in and accepted by the defendant company, December 2, 1911, about the time the plaintiff company abandoned all effort to secure further business. It was not shown by the plaintiff that this list was of the slightest pecuniary advantage to the defendant company, but on the other hand it was positively asserted that it was not. The plaintiff claimed one thousand, five hundred and forty-four dollars and thirty-one cents.

Verdict directed for defendant. Motion for new trial overruled.

BOYCE, J., delivering the opinion of the court:

The contract sued upon in this action is dated the twenty-eighth day of June, 1911. The question is whether this contract

·28 Del.] ENGLAND-KELCH CO. vs. EVENING JOURNAL CO.    181

Verdict—Motion for New Trial—Argument.

was not subsequently abandoned. It was competent for the parties thereto to novate, alter or waive said contract.

On August 1, 1911, the defendant company sent the following telegram to the plaintiff company:

"Wilmington, Del., etc.
"Fred England, 203 Broadway, New York.
"Financial, mercantile and manufacturing conditions are bad. Results to date are very discouraging. We advise abandoning the proposition at once. Either phone or see us without delay to decide matters. .
"The Evening Journal Co."

A few days thereafter the said Fred England, representing the plaintiff company, came to Wilmington and conferred with representatives of the defendant company. The uncontradicted evidence is that the parties, finding it impractical to continue the original contract, entered into a new or modified agreement; and we find as a matter of law that a new or substituted oral agreement was entered into. The plaintiff company, therefore, cannot recover under the special counts on the contract sued upon; neither can it recover under the common counts, unless the work done—that is, the subscriptions obtained—were beneficial to the defendant company.

There is no evidence that the advertisements turned in by the plaintiff company, which were not paid for, were of the slightest beneficial interest or value to the defendant company. While we are always reluctant to withdraw a case from the jury, yet, under the uncontradicted testimony in this case, we are constrained to give the jury binding instructions to return a verdict for the defendant.

Gentlemen of the jury:—The court directs you to return a verdict for the defendant.

Verdict for defendant.

Motion for a new trial was made, and by consent of parties was argued before PENNEWILL, C. J., and BOYCE, J.

The grounds relied upon were:

That the evidence of the defendant tending to establish a new contract was conflicting, and the case therefore should have been submitted to the jury, under proper instructions from the

court as to what their verdict should be if they should find that a valid new contract had been made.

That the evidence of the defendant fails to disclose that there was any consideration for the alleged guarantee; but that, on the contrary, the evidence clearly discloses that there was no consideration for the same, and consequently it was void.

In the argument, it was conceded that no testimony was offered by the plaintiff to deny or to controvert the testimony on the part of the defendant relative to the alleged new contract, but it was contended that the testimony of the defendant itself was not sufficiently clear and certain to warrant the court in deciding, as a matter of law, that a new contract had been made which prevented the plaintiff from recovering.

PENNEWILL, C. J.:—The court feel constrained to refuse the motion for a new trial.