JOSEPH HEITZ *vs.* JAMES SAYERS and FRANCES T. SAYERS.

1. HUSBAND AND WIFE—CONVEYANCE TO HUSBAND AND WIFE CREATES ESTATE BY ENTIRETY.

A conveyance of real estate to a husband and wife creates an estate by the entirety, such estates not having been abolished by the Married Woman' Act (*Rev. Code* 1915, *c.* 87).

2. HUSBAND AND WIFE—BOTH OWNERS OF ENTIRE ESTATE BY THE ENTIRETY.

As to an estate by the entirety, both husband and wife are seized and are not owners merely of equal interests in, but of the whole estate during their joint lives.

3. PARTITION—ESTATES BY ENTIRETY CANNOT BE PARTITIONED.

Estates by the entirety cannot be partitioned.

4. HUSBAND AND WIFE—INTEREST OF SPOUSE IN ESTATE BY ENTIRETY CANNOT BE SOLD, EXCEPT BY JOINT ACT.

Neither an estate by the entirety nor an interest of either owner therein can be sold, except by the joint act of both husband and wife.

5. HUSBAND AND WIFE—NOT A LIEN ON ESTATE BY ENTIRETY.

A judgment against one tenant by the entirety cannot become a lien on the entirety property or on any interest therein during the joint lives of the husband and wife.

6. HUSBAND AND WIFE—ON DEATH OF SPOUSE SURVIVOR ACQUIRES NO NEW INTEREST IN ESTATE BY ENTIRETY.

On the death of one tenant by the entirety, the surviving husband or wife continues to own the whole estate and acquires no new interest by the death of the other.

7.  HUSBAND AND WIFE—INTEREST IN ESTATE BY ENTIRETY "SEPARATE
    PROPERTY" OR ESTATE OF WIFE UNDER STATUTE.

Interest of wife in estate by entirety is "separate property" or estate of
the wife under 30 *Del. Laws, c.* 197.

8.  HUSBAND AND WIFE—WIFE HAD RIGHT TO ENTER INTO CONTRACT FOR.
    ALTERATION AND REPAIR OF ESTATE BY ENTIRETY.

Under 30 *Del. Laws, c.* 197, a married woman had the right to contract
for alteration and repair of an estate by the entirety.

9.  HUSBAND AND WIFE—MARRIED WOMAN'S ACT REMEDIAL AND CON-
    STRUED LIBERALLY AS TO CERTAIN MATTERS.

Though, for certain purposes, the married women's acts are in derogation
of the common law, and are, therefore, construed strictly, yet in order to secure
and enforce the rights actually given by such acts and so that their intent and
purpose may be carried out, they are classed as remedial statutes, and are
construed liberally.

10.  WORK AND LABOR—WHEN RECOVERY MAY BE HAD ON COMMON COUNTS
     WHERE SPECIAL CONTRACT EXISTS.

Ordinarily, where there is a special contract between the parties, there can
be no recovery on the common counts for anything done pursuant to such
contract; but, though work and labor may have been done and materials may
have been furnished in part performance of a contract, there may be a re-
covery therefor under the common counts, where the special contract has been
fully performed by the plaintiff and nothing remains to be done but the pay-
ment by the defendant of the price in money, or where the special contract,
though partly performed, has been abandoned by mutual consent of the par-
ties, or has been rescinded or defeated by some act on the part of the employer,
or where what was done by the employee under the special contract was not in
the stipulated time and manner and yet was beneficial to the defendant and
was accepted and enjoyed by him.

11.  WORK AND LABOR—WHY RECOVERY IS PERMITTED ON COMMON COUNT
     WHERE SPECIAL CONTRACT PERFORMED.

Recovery on the common counts is permitted where a special contract has
been fully performed by the employee and nothing remains to be done but the
payment by the defendant of the price in money, because the law implies a
contract under such circumstances, even though there has been no express
contract.

12.  WORK AND LABOR—EMPLOYEE MUST TREAT SPECIAL CONTRACT AS AT
     AN END TO RECOVER ON COMMON COUNTS.

In order for employee to recover on the common counts where partly
performed special contract has been abandoned by mutual consent or has been
rescinded or defeated by some act on the part of the defendant, it is not
enought to show that the employee has been hindered or prevented by the de-
fendant from performing the contract on his part, but it must also appear that
the plaintiff was at liberty to and did treat such contract as at an end.

13.  WORK AND LABOR—THEORY ON WHICH RECOVERY PERMITTED UNDER
     COMMON COUNTS WHERE SPECIAL CONTRACT NOT CARRIED OUT IN
     STIPULATED TIME AND MANNER.

Under the rule that where work and labor done by plaintiff under special contract was not in the stipulated time and manner, and yet was beneficial to the defendant, and was accepted and enjoyed by him, plaintiff may recover the reasonable value of the benefit, the contract need not be rescinded or abandoned, yet the plaintiff cannot recover thereon because he has deviated from its terms and, therefore, cannot show performance; recovery being based upon the theory that the defendant should not be permitted to receive benefits or enrich himself at the expense of the plaintiff.

14. WORK AND LABOR—MEASURE OF RECOVERY WHERE PLAINTIFF HAS FAILED TO FULLY PERFORM SPECIAL CONTRACT.

Where the plaintiff, through no fault of the defendant, has failed to fully perform his special contract, yet his labor and materials have been accepted by the defendant and are of some benefit to him, the reasonable value of such benefit to the defendant, less the damage resulting to the defendant from the plaintiff's breach, is the proper measure of the amount that the plaintiff can recover.

15. WORK AND LABOR—BURDEN ON PLAINTIFF TO SHOW HOW MUCH DE-
FENDANT BENEFITED.

Where plaintiff, through no fault of defendant, has failed to fully perform his special contract, and defendant has accepted his labor and materials, and has been benefited thereby, the burden is on the plaintiff to show how much the defendant has been benefited by his labor and materials.

16. WORK AND LABOR—STIPULATED AMOUNT LIMIT OF RECOVERY FOR
WORK DONE.

In an action on the common counts by one in default in the full performance of a special contract, where the plaintiff, through no fault of the defendant, has failed to fully perform his contract, and his labor and materials have been accepted by the defendant and have benefited him, the contract price should be the limit of the total amount that defendant should be compelled to pay for full performance, and recovery should not be in excess of such a portion of the agreed price as the reasonable value of what he performed bears to the whole work that was to have been done, less damages resulting to defendant from plaintiff's breach.

17. WORK AND LABOR—WHERE EMPLOYER IN DEFAULT, CONTRACT PRICE
FORMS NO CONCLUSIVE LIMIT TO AMOUNT RECOVERABLE.

Where the employer under a special contract was in default and his act prevented the performance of the contract, the employee is entitled to recover the reasonable value of his services, and the contract price forms no conclusive limit to the amount that he can recover.

(*February* 16, 1923.)

HARRINGTON, J., sitting.
*Henry R. Isaacs* for plaintiff.
*James I. Boyce* for defendants.

Superior Court for New Castle County, January Term, 1923.

Assumpsit No. 249, September Term, 1921.

Case heard on motion for new trial and in arrest of judgment. Plaintiff declared on the common counts, including a *quantum meruit* and a *quantum valebant* count. The defendants filed the usual pleas in assumpsit, including a plea of nonassumpsit and a notice of recoupment.

The evidence produced by the plaintiff tended to show that he was a contractor and builder; that he verbally agreed with the defendants to make certain alterations in and repairs to a house belonging to them as husband and wife or as tenants by the entirety; that by said agreement he was to receive the usual union wages for himself and his men for doing said work and was to purchase all necessary materials and to be reimbursed for the amounts paid therefor; that he was to be paid by the defendants for said work, labor and materials every week, every other week, or whenever he wanted such pay; that no specified time was fixed for the completion of said work; that after working several weeks on said property and pursuant to said contract he was paid five hundred dollars, on account of the amount due him, by one of the defendants, James T. Sayers; that some time after that and at a later stage of the work he asked for another payment; that said request was not only refused, though in violation of the express terms of said agreement, but the existence of said agreement was denied, the claim being made that an entirely different agreement had been entered into, and that the work done by the plaintiff had been done thereunder; that by reason of this the plaintiff stopped work and never completed his contract.

The plaintiff's claim for labor done and materials furnished, after deducting a $500.00 payment therefrom, amounted to one thousand, six hundred and sixty-four dollars and sixty cents.

The evidence produced by the defendants tended to show that the verbal agreement, under which the plaintiff was to alter and repair their property, provided that said work, including the necessary materials, should not cost over $1300.00 and should be completed by September 1st, 1920; that no time was fixed for the payment of said sum of $1300.00; that the plaintiff partially performed said work under said contract but abandoned it before completion,

claiming that a different contract had been made with the plaintiff and that there had been a part performance thereunder; that it cost the defendants $384.78 to complete the work agreed to be done by the plaintiff and abandoned by him and that they were also compelled to pay two months' extra rent, amounting to $180.00, by reason of said work not being completed by September 1st, 1920, as was provided by the contract.

The defendants requested the Court to charge the jury, among other things, that—

The reasonable value which the defendants derived from the plaintiff's work, where the plaintiff was in default, "must be determined by ascertaining what part of the work was finished and what it cost to complete the work, substract what it cost to complete the work from $1300.00, if you believe that was the sum agreed upon, from the remainder deduct the damages, if any, sustained by the Sayers, either by delay or by remaining defective workmanship, or both. If what you have left exceeds $500.00, your verdict should be for the plaintiff for such excess, but, if what you have left is less than $500.00, your verdict should be simply for the defendants."

This request was refused and the instructions quoted in the fourth reason for granting a new trial were given. The jury found a verdict for the plaintiff for the whole amount of his claim, amounting to $1664.60. The defendants then moved for a new trial and in arrest of judgment. They assign as reasons for the granting of a new trial that this Court gave the following instructions to the jury:

First. "The defendants' counsel has asked that you be instructed to return a verdict for the defendants, among other grounds, on the ground that a married woman's interest in property held by her and her husband as tenant-by the entirety is not her sole and separate property, and that she can, therefore, make no contract with respect thereto. I cannot so instruct you."

Second. "If, after considering all the evidence you believe that the contract relied on by the plaintiff existed between him and the defendants, including the said Frances T. Sayers, that the work was done and the materials were furnished thereunder, and that said contract before being fully performed was repudiated by the defendants, * * * your verdict should be for the plaintiff for such an amount as the work done and materials furnished by the plaintiff were reasonably worth."

Third. "If you believe that there was an express contract on the part of the plaintiff to make the alterations and repairs on the defendants' property for $1300.00, as claimed by the defendants, but that such contract was not fully performed, either in the stipulated time and manner, or otherwise in accordance with the terms thereof, and that said contact was finally abandoned before completion, but that work had been done and materials furnished

Opinion

thereunder, and that said work was accepted by the defendants, and was of some value and benefit to them, your verdict should be for the plaintiff, for such part performance, and for such sum as such work was reasonably worth; subject, however, to a deduction of such damages as were suffered by the defendants, if any, by reason of the plaintiff's failure to comply with his said contract, and subject to the further deduction of $500.00 admitted to have been paid by the defendants in payment of the work done by the plaintiff."

Fourth. "If you should find that there was an express contract, between the plaintiff and the defendants to make the alterations and repairs in question to the defendants' property for the sum of $1300.00, and your verdict should be for the plaintiff, in assessing the damages for the reasonable value of the work done by him, you may consider the compensation fixed by such contract, together with any evidence bearing upon the question of the benefits which the defendants may have derived from what was done by the plaintiff."

HARRINGTON, J., delivering the opinion of the Court:

This motion raises the following questions:

(1)   Where a husband and wife own property as tenants by the entirety, can the wife join with her husband and make a valid contract for the repair of said property?

(2)   What is the proper measure of damages where work has been done and materials furnished in part performance of a special contract, but where said contract has not been fully performed; (a)   because of the default of the plaintiff; (b)   because of the default of the defendant?

[1-6]   It is admitted that a conveyance of real estate to a husband and wife creates an estate by the entirety, and that such estates have not been abolished in this State by the Married Woman's Act. *Kunz v. Kurtz*, 8 *Del. Ch.* 404, 68 *Atl.* 450, and *Hurd v. Hughes*, 12 *Del. Ch.* 188, 109 *Atl.* 418. Whether such estates have been in any way affected by such acts is, however, a different question. An estate by the entirety is a peculiar estate, both husband and wife being seized and, therefore, being the owners not merely of equal interests in, but of the whole estate during their joint lives. Because of this peculiarity such estates can neither be partitioned, nor can they, or the interest of either owner therein be sold, except by the joint act of both husband and wife; nor can a judgment against one tenant become a lien on the entirety property or on any interest therein, during the joint lives of the husband and wife. And on the death of one tenant the surviving husband or

32 Del.]     Heitz vs. Sayers and Sayers     213

Opinion.

wife continues to own the whole estate and acquires no new interest by the death of the other.

Can such a property right be construed as the separate property or estate of the wife, under *Chapter* 197, *vol.* 30, *Delaware Laws*, approved April 21, A. D. 1919? The defendants contend that it cannot, and in support of this contention cite *Speier v. Opfer*, 73 *Mich.* 35, 40 *N. W.* 909, 2 *L. R. A.* 345, 16 *Am. St. Rep.* 556. With reference to the Married Women's Acts, the Court of Chancery, in *Hurd v. Hughes, supra,* in which a tenancy by the entirety was involved, said:

"These statutes in Delaware, as elsewhere, free her estate of her husband's possession, control or disposition, and from liability for his debts."

The conclusion reached in the above case was largely based on the decision of the Court of Errors and Appeals in *Evans v. Lobdale*, 6 *Houst.* 212, 22 *Am. St. Rep.* 358; though that case did not involve a tenancy by the entirety.

*Kohn v. Collison*, 1 *Marv.* 109, 27 *Atl.* 834, is to the same effect as *Evans v. Lobdale;* and *Kunz v. Kurtz, supra,* expresses the same thought when, adopting the language of Judge Strong, in *Dover v. Dover*, 56 *Pa.* 106, it held, in substance, that the married women's acts merely regulated the enjoyment of property vested in a married woman and did not affect the creation of or vesting of any estate in her.

*Hurd v. Hughes* was argued March 12, 1920, and, therefore, after the enactment of *Chapter* 197, *vol.* 30, though no special reference was made to it in that case.

But it cannot be contended that this act was intended to be less liberal toward married women than the statutes construed in the above cases.

*Chapter* 197, *vol.* 30, provides:

"That the property of a married woman,   *  *  *   shall be  *  *  * her sole and separate property."

[7] While it is true that statutes in derogation of the common law are construed strictly and the rights conferred are usually limited to such rights and classes of property as are expressly

mentioned in the statute (*Kohn v. Collison, supra;* 21 *Cyc.* 1366), that a married woman's interest in an estate by the entirety is "property," seems too clear to admit of argument. *Hurd v. Hughes, supra.* That being true, it is her sole and separate property within the contemplation and meaning of the statute above referred to. See, also, *Cox v. R. R.,* 123 *Mo. App.* 356, 100 *S. W.* 1096; *Davis v. Clark,* 26 *Ind. Appeals* 424, 89 *Am. Dec.* 471; *Wilson v. Logue,* 131 *Ind.* 191, 30 *N. E.* 1079, 31 *Am. St. Rep.* 426.

The fact that the statute in question also provides that a married woman "may sell, convey, assign, transfer, devise, bequeath, encumber, or otherwise dispose of" her separate property cannot, because of the peculiar nature of a married woman's interest in an estate by the entirety, operate to exclude it from being included within the broad meaning of the word "property," as used in such statute.

The rights of any owner of property, with respect thereto, may be limited by any legal and valid restrictions in the grant or arising from the nature of the estate created by such grant, and a tenancy by the entirety is no exception to this rule. But the statute above referred to also says, "and she may contract jointly (including with her husband) or separately, sue and be sued, and exercise all other rights and powers, * * which a *feme sole* may do under the laws of this state."

[8] If this clause, giving a married woman a right to make contracts is confined to her separate property, as is contended by the defendants, Frances T. Sayers, one of the defendants, by reason of her interest in the entirety property, therefore, had the right to enter into a contract for its alteration and repair.

But the right of Frances T. Sayers, to make this contract, can be supported on another ground.

While the Married Woman's Act (*Section* 3052, *Rev. Code* 1915) in force prior to the enactment of *Chapter* 197, *vol.* 30, *Del. Laws,* expressly confines her rights to make contracts relative to her own property (*Kirkley v. Lacey,* 7 *Houst.* 213, 30 *Atl.* 994; *Kohn v. Collison, supra*), a fair and reasonable construction of the present statute shows no such limitation or restriction.

[9]   It is true, as I have already stated, that for certain purposes the married women's acts are in derogation of the common law and are, therefore, construed strictly, yet in order to secure and enforce the rights actually given by such acts and so that their intent and purpose may be carried out, they are classed as remedial statutes and are construed liberally. *Kohn v. Collison, supra;* 21 *Cyc.* 1366. Viewing this statute in the light of the limitations and restrictions in the old law, and apparently sought to be remedied by the broad language of the present act, a fair construction of it compels the conclusion that the Legislature intended to give a married woman the right to make contracts, regardless of whether they had any reference to her own property.

This Court, therefore, committed no error in charging the jury that Frances T. Sayers had the right to contract with respect to property owned by herself and her husband, as tenants by the entirety.

[10]   Ordinarily, where there is a special contract between the parties, there can be no recovery on the common counts for anything done pursuant to such contract; but though work and labor may have been done and materials may have been furnished in part performance of a contract, that there may be a recovery therefor under the common counts under the following circumstances cannot be questioned: first, where the special contract has been fully performed by the plaintiff and nothing remains to be done but the payment by the defendant of the price in money; second, where the special contract "though partly performed (by the plaintiff) has been abandoned by mutual consent of the parties, or has been rescinded or defeated by some act on the part of the defendant," the plaintiff can recover "remuneration for what he had done"; third, where "what was done by the plaintiff" under the special contract was "not in the stipulated time and manner and yet was beneficial to the defendant and has been accepted and enjoyed by him" he may recover "the reasonable value of the benefit which upon the whole the defendant has derived from what he has done." *Hurlock v. Murphy,* 2 *Houst.* 550, 557; *McDaniel v. Webster,* 2 *Houst.* 305, 311; *Johnson Forge Co. v. Leonard,*

*3 Penn.* 342, 51 *Atl.* 305, 94 *Am. St. Rep.* 86, 57 *L. R. A.* 225; *Massey v. Greenabaum Bros.*, 5 *Penn.* 20, 58 *Atl.* 804.

[11, 12] Recovery on the common counts is permitted in the "first" class because the law would have implied a contract under such circumstances even though there had been no express contract. Recovery in the "second" and "third" classes is also clearly based on the law of implied contracts, and is not in effect a suit on the special contract as is argued by the defendants. In the "second" class, in order for the common counts to be applicable the special contract must have been abandoned by mutual consent or rescinded, repudiated or defeated by some act on the part of the defendant. It is not enough to show that the plaintiff has been hindered or prevented by the defendant from performing the contract on his part; it must also appear from the circumstances that the plaintiff was at liberty to, and did treat such contract as at an end. *Hurlock v. Murphy, McDaniel v. Webster and Johnson Forge Co. v. Leonard, supra; Woolley on Del. Prac., vol.* 1, § 1454; *Woodward on Quasi Contracts*, §§ 260 and 263. If any additional support for this proposition is needed, it is also clearly shown by the following cases where services were rendered under contracts which were void because of the statute of frauds, or because of having been made on Sunday, yet the plaintiffs on being compelled to sue because of the default of the defendants, were permitted to recover the reasonable value of such services under the common counts. *McGartland v. Steward*, 2 *Houst.* 277; *Watson v. Watson*, 1 *Houst.* 209; *Spahn v. Willman*, 1 *Penn.* 125, 39 *Atl.* 787. See, also, *L. R. A.* 1916D, 895, etc.

[13] In the "third" class, while the contract need not be rescinded or abandoned, yet the plaintiff cannot recover thereon because he has deviated from its terms and, therefore, cannot show performance. *Hurlock v. Murphy, supra; Woolley's Del. Prac., supra.*

[14, 15] If the recovery in such cases is not on the special contract, what if any effect does the question of whether the failure to perform such contract was due to the act of the plaintiff, or to the act of the defendants have on the measure of the plaintiff's

recovery? The common counts in assumpsit and the law of im-
plied contracts to which they apply are founded on equitable
principles which have gradually become established as a part of
the common law. *History of Assumpsit, vol.* 2, *Harvard Law
Rev., p.* 66; *Woodward on Quasi Contracts,* §§ 3, 6-9 and 162. Re-
covery on such contracts is based upon the theory that the de-
fendant should not be permitted to receive benefits, or unjustly
enrich himself, at the expense of the plaintiff. *Woodward on
Quasi Contracts,* § 8. Where the plaintiff is in default in the full
performance of a special contract, his position is not the same as
one who does work or furnishes labor and materials upon request,
and who, therefore, has the right to recover the reasonable and
usual value of such services or materials, regardless of their bene-
fit to the defendant. Where, however, the plaintiff, through no
fault of the defendant has failed to fully perform his contract,
yet his labor and materials have been accepted by the defendant,
and are of some benefit to him, the reasonable value of such benefit
to the defendant, less, of course, the damage resulting to the de-
fendant from the plaintiff's breach is the proper measure of the
amount that the plaintiff can recover. *Williston on Contracts,*
§§ 1480, 1482, 1485; *Woodward on Quasi Contracts,* § 178; *Gillis
v. Cobe,* 177 *Mass.* 584, 59 *N. E.* 455; *Viles v. Kennebec Lumber Co.,*
118 *Me.* 148, 106 *Atl.* 431. But this rule is subject to the additional
limitations hereinafter stated; and subject to such limitations the
burden is on the plaintiff to show how much the defendant has been
benefited by his labor and materials. *Williston on Contracts,* §
1482; *Gillis v. Cobe, supra.*

This rule of benefit to the defendant, under such circum-
stances, has been adopted in this state. *Hurlock v. Murphy, supra;
Merritt v. Layton,* 1 *Boyce* 213, 75 *Atl.* 795; *Woolley's Del. Prac.,*
§ 1454.

In fact, the benefit to the defendant rule was also applied in
*England-Kelch Co..v. Evening Journal Co.,* 5 *Boyce* 179, 91 *Atl.*
448, where the plaintiff sought to recover on the common counts
for acts performed under a special contract, though such contract
had been rescinded by mutual consent; that question, however,

is not involved here. A defendant not in default has the right to expect to get what he bargained for, and to pay therefor not nore than the contract price. Though the suit is not on the contract, a defaulting plaintiff certainly should not be permitted to deprive the defendant of that right. That is what the Court meant in *Hurlock v. Murphy, supra*, when it said in reference to the plaintiff's default, in complying with the special contract so that he could not recover thereon "yet he may recover upon the common counts for the reasonable value of the benefit which upon the whole the defendant has derived from what he has done." See, also, *Taylor v. Trustees of Poor, Penn.* 555, 43 *Atl.* 613.

[16] The contract price should, therefore, be the limit of the total amount that the defendant should be compelled to pay for full performance when the plaintiff is in default; and what the plaintiff recovers should not be in excess of such a portion of the agreed price as the reasonable value of what he performed bears to the whole work that was to have been done by him, less, as above stated, the damages resulting to the defendant from the plaintiff's breach. *Woodward on Quasi Contracts*, § 178. The language of *Williston on Contracts*, § 1485, with respect to this question is as follows:

"The plaintiff should then be limited to such a fraction of the contract price as what he performed bears to the whole. He is not necessarily entitled to as much as this, if the defendant has not received so much benefit, but he should never recover more."

See, also, *Gillis v. Cobe, supra; Viles v. Kennebec Lumber Co., supra; Danforth v. Freeman*, 69 *N. H.* 466, 43 *Atl.* 621; *McKinney v. Springer*, 3 *Ind.* 59, 54 *Am. Dec.* 470; *Connolly v. Sullivan*, 173 *Mass.* 1, 53 *N. E.* 143; *Burke v. Coyne*, 188 *Mass.* 401, 74 *N. E.* 942.

[17] Where, however, the defendant is in default, and his act prevented the performance of the contract, the rule is different. Under such circumstances, the plaintiff should recover the reasonable value of his services and the contract price forms no conclusive limit to the amount that he can recover. This is the natural result of the theory on which the law of implied contracts is based. The author of *Williston on Contracts*, § 1485, in this connection says:

Opinion.

"When the plaintiff's failure to fulfill completely his obligations under the contract, is due to the defendant's default, there is no reason for imposing any limitation on the amount which he may recover on a *quantum meruit* or *quantum valebant* for what he has done other than that set by the principles of fair value." See, also, *Connolly v. Sullivan*, 173 *Mass.* 1, 53 *N. E.*·143, *supra; Rogers v. Becker-Brainard Milling Co.*, 211 *Mass.* 559, 98 *N. E.* 592; *Clark v. Manchester*, 51 *N. H.* 595; *Woodward on Quasi Contracts*, § 268.

This rule has also been followed in this state. In *McDaniel v. Webster, supra*, which involved a building contract abandoned and rescinded by the plaintiff through the fault of the defendant, the plaintiff sued on the common counts, for work and materials furnished under the special contract, and Judge Gilpin, in charging the jury, said:

"If there was originally a special agreement between the parties in regard to the matter, under which it was commenced and prosecuted, as far as it was performed by the plaintiff, but which special contract was afterwards rescinded, or abandoned by reason of the misconduct of the defendant, * * * the plaintiff would then, in either case, be entitled to recover on the common counts for his work and the materials furnished, as far as he had proceeded with it, without any reference to the special agreement, the same as if none had ever been entered into by him; and in either of those events, * * * his book of original entries would be admissible and competent evidence * * * to prove the work done and materials furnished, and the value of them," etc.

*Watson v. Watson and McGartland v. Steward, supra*, are to the same effect; and considering the whole case the same thing was evidently meant by the language quoted from *Hurlock v. Murphy* on a preceding page of this opinion where the Court said, with reference to a defendant in default, that the plaintiff could recover "remuneration for what he had done." It is true that some courts have held that the contract price governs the amount that can be recovered, no matter who is in default. *Kehoe v. Rutherford*, 56 *N. J. Law* 23, 27 *Atl.* 912. For other cases see *Williston on Contracts*, § 1485, note, and *Woodward on Quasi Contracts*, § 268.

But such rule does not seem to represent the weight of authority or the better rule. *Williston on Contracts and Woodward on Quasi Contracts, supra.* It is also opposed to the Delaware cases above cited.

While the distinction as to the measure of damages between a defaulting plaintiff or defendant has not always been clearly

drawn by this Court, *Hawthorne v. Murray*, 3 *Boyce* 349, 84 *Atl.* 5; *Voightmann v. Wilmington Trust Building Corporation*, 7 *Penn.* 265, 78 *Atl.* 920; *Elliott v. Wilson*, 2 *Boyce* 445, 80 *Atl.* 35; there has been no apparent intent to change the old established rules. No prayers were apparently presented in any of the cases above referred to, and *Elliott v. Wilson* cites with approval the early cases of *Hurlock v. Murphy and McGartland v. Steward, supra*, both of which, as has already been stated, are in accord with the principles herein stated. The instructions given in the second reason assigned for granting a new trial were in accordance with the conclusions reached in this opinion, and there was, therefore, no error in such instructions.

The instructions given in the third reason assigned for granting a new trial, standing alone, do not clearly instruct the jury that the measure of recovery when the plaintiff is in default is the reasonable value or benefit to the defendants of plaintiff's part performance; but, when read in connection with the fourth reason assigned, as well as with the following preceding paragraphs of the charge, such instructions fairly present the law to the jury:

"But where it appears that what was done by the plaintiff was done under a special contract, but not in the stipulated time and manner, and yet was beneficial to the defendants and has been accepted by them, although he cannot recover upon the contract from which he has departed, yet he may recover on the common counts for the reasonable value of the 'benefit' which, upon the whole, the defendants have derived from what he has done."

The instructions given in the fourth reason assigned for granting a new trial, measured by the principles above stated, were, however, erroneous. They failed to state the proper measure of the plaintiff's right to recover if he was in default, or that there was any limit to such right other than the benefits received and accepted by the defendants. Though they believed that the work was done under the contract relied on by the defendants, the jury were, therefore, justified in believing that a verdict for the plaintiff might be in excess of $1300.00, less the undisputed deductions referred to, if the benefits to the defendants exceeded that amount. The instructions given and objected to under this reason followed *Merritt v. Layton, supra*, in which the defendant contended that

the plaintiff was in default. The instruction in that case that the jury "might consider the contract price in fixing the amount of the verdict, if the plaintiff recovered," was undoubtedly correct so far as it went, and there was nothing to show that the Court was asked to go any further. That case, therefore, did not justify a refusal to instruct the jury in accordance with the principles herein stated, when there was a prayer to that effect. There was some contention at the argument for a new trial that the jury should have been charged that a plaintiff willfully refusing to comply with his contract, and, therefore, willfully in default, could not recover. Even if the facts of this case justify such a construction, which may be doubted, there was no prayer to that effect at the trial, and I, therefore, have refrained from discussing or passing on that point.

Because of the fourth reason assigned by the defendants, the verdict of the jury is set aside, and a new trial is granted.

NOTE.—Where the plaintiff had fully performed under a contract for the sale of property and nothing remained to be done but the payment in money of the amount due, this Court in *Pusey & Jones Co. v. Dodge*, 3 *Penn.* 63, 49 *Atl.* 248, in charging the jury stated that the agreed price was the proper measure of the plaintiff's recovery. See, however, *Woodward on Quasi Contracts*, § 262, p. 414, etc. When there is no special contract and labor and materials are furnished to the defendant, the plaintiff's book account is admissible, though not conclusive, to show the value of the benefits received by the defendant. *McDaniel v. Webster*, 2 *Houst.* (*Del.*) 305.