Francis Kowing, Appellant, *v.* Washington Manly et al., Respondents.

Where a bailor instructs the bailee not to deliver his property to any person except upon his written order, a delivery to the wife of the bailor without such order is not equivalent to a delivery to the husband, and does not discharge the bailee from liability.

At common law the husband could assert a right to all personal property rightfully acquired by the wife, and to all of which she possessed herself by his authority, or with his co-operation, but she had no power to thrust such possession upon him by her own wrong without his sanction, or to make him responsible for it against his will and without his knowledge. A delivery of property to her without his assent would neither create a direct liability on his part to the party delivering, nor would it discharge the latter from a previously existing liability to the husband. The liability of the husband to be sued jointly with his wife for personal property taken and wrongfully converted by her prior to or during

coverture did not rest upon the ground that he, in contemplation of law, was guilty of the taking or conversion, but resulted from the incapacity of the wife to be sued without her husband. A married woman alone might be guilty of a conversion.

Although where a wife has obtained possession of the husband's property from his bailee by a fraud, the bailee could maintain an action against both husband and wife for the wrong, that is not a defence to, and will not bar a recovery by him against the bailee. A liability of a plaintiff jointly with another cannot be set up as a bar to a claim due him individually, nor can a conditional or defeasible liability bar one which is absolute and unconditional. (The authorities as to the extent and nature of the husband's liability at common law for the acts of the wife collated and discussed.)

For the purpose of proving the genuineness of a signature against a party to be charged thereby, it is not competent to prove that the signature is not in a simulated handwriting.

(Argued February 20, 1872; decided April 16, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial district, in favor of defendants. The action was brought to recover the value of nine U. S. 7.30 bonds of $1,000 each. Defendants, as brokers, had purchased the bonds for plaintiff and they were left with them. Plaintiff gave defendants written instructions not to deliver the bonds to any person except upon his written order. The bonds were subsequently delivered by defendants to wife of plaintiff upon the presentation of an order therefor purporting to be signed by plaintiff, which order defendants supposed to be genuine. The jury were directed to find a general verdict, and in addition, to answer the following questions. They found as follows:

Q. 1. Is the signature to the order for the delivery of the bonds, dated January 6, 1866, the genuine signature of the plaintiff? A. No.

Q. 2. Did the plaintiff deliver the bonds in controversy to the wife of the plaintiff? A. Yes.

Q. 3. Did the plaintiff's wife fraudulently obtain a delivery of the bonds to her? A. Yes.

They further found a verdict for the plaintiff against the defendants for the sum of $10,641.60.

Judgment suspended, and exceptions ordered to be heard in the first instance at the General Term, when judgment was ordered to be entered for defendants.

*F. N. Bangs* for the appellant. The wife was not, by virtue of the marital relation merely, authorized to reduce his choses in action to her possession. (*Etherington* v. *Parrott*, 1 Salkeld, 118 ; *Offley* v. *Clay*, 3 Com. Bench, N. S., 372 ; *Wellingham* v. *Simonds*, 1 Dessaussure Eq. Rep., 272 ; 2 Parsons on Contracts, 615.) Though qualifiedly liable for the tort, he is not guilty of it, but she is. His liability was to put a stress upon him to fulfill her, not his, obligations. (1 Chitty's Pleadings, 12 Am. ed., 92, 93 ; Bacon's Abr., Baron and Femme, L ; Coke Littleton, 351 *b ;* Comyn's Digest, Baron and Femme, Y ; Reeve's Dom. Rel., 3d ed. [72], 144, 149 ; 1 Rolle, 351 ; Rep. Tem. Hardwicke, 399 ; Levinz, 122 ; Cullen, 392 ; Cro. Car., 376 ; 1 Hawkins P. C., b. 1, ch. 1, § 9 ; 3 Blackstone, 414 ; 2 Kent, 150 ; *Capel* v. *Powell*, 17 C. B., 748 ; *Goulding* v. *Davidson*, 26 N. Y. R., 604.) The husband, at common law, was not liable for the torts of the wife ; but he was joined only by reason of the universal rule that the wife, during coverture, could not be either a sole plaintiff or a sole defendant. (*Capel* v. *Powell*, 17 C. B., 748 ; *Hyde* v. *S——*, Holt's Rep., 101 ; *Langstaff* v. *Rain*, 1 Wilson, 149 ; *Anonymous*, 3 id., 124 ; *Larkin* v. *Marshall*, 4 Exchequer Rep., 805 ; *Newton* v. *Boodle*, 9 Q. B., 948 ; *Sparkes* v. *Bell*, 8 B. & C., 1 ; *Mitchinson* v. *Hewson*, 7 Term Rep., 350 ; *Angel* v. *Felton*, 8 Johns., 149 ; *Gage* v. *Reed*, 15 id., 403 ; *Horton* v. *Payne*, 27 How. P. R. ; *Marsh* v. *Potter*, 30 Barb., 506.) Where one tort is set up as a cause of action, another tort on the part of the plaintiff is no defence. (*Hayes* v. *Peddle*, 1 Sand., 284.) The second finding is not a subject of counter claim or set off, as the wife is not a party. (*Bates* v. *Rosekrans*, 37 N. Y., 412.) It is not available as recoupment, as it is not connected with the subject-matter of the action. (*Cram* v. *Dresser*, 2 Sand., 120 ; Sedgwick on Dam., 4th ed., 510 [444] ; *Nichols* v. *Dusenbury*, 2 N. Y. R., 286 ;

*Vassar* v. *Livingston*, 13 N. Y., 257.) The finding is not available to defendants upon the principle of avoiding circuity of action. That principle applies only where parties are identical, damages equal, and the claims belong to the same class. (*Charles* v. *Alden*, 15 Com. B.; *Speeding* v. *Young*, 16 Com. B. [N. S.], 829; *Alston* v. *Herring*, 11 Exchequer, 831; *Stimson* v. *Hall*, 1 Hurlston & N., 831; *Marshall* v. *Oakes*, 5 id., 793.) The husband is not always, even qualifiedly, liable for the tort of the wife. (*Assn.* v. *Fairhurst*, 9 Exchequer, 422; *Gurney* v. *Kenny*, 2 E. D. Smith, 132.) Under the act chapter 90, Laws of 1860, plaintiff's wife would be liable in a separate action. (*Etherington* v. *Parrott*, 1 Salk., 118; *Gurney* v. *Kenny*, 2 E. D. Smith, 132.)

*S. P. Nash* for the respondents. Evidence of a person competent to judge whether a writing is in the genuine hand of he who wrote it, or is an attempt by some person to imitate the hand of another, is admissible. (*Lansing* v. *Russell*, 3 Barb. Ch. R., 325; *People* v. *Hewit*, 2 Park. Cr. R., 20; *Modey* v. *Rowell*, 17 Pick., 490; *Commonwealth* v. *Carey*, 2 id., 47; *Lyon* v. *Lyman*, 9 Conn., 55; *Hully* v. *Vantheric*, 7 S. & R., 185; *Lodge* v. *Phipher*, 11 id., 333.) At common law the possession of personal property by the wife is the possession of the husband. (*Ball* v. *Bell*, Ala. Select C., 465.) A delivery to wife is a delivery to the husband. (*Machen* v. *Machen*, 15 Ala., 373; *McDaniels* v. *Whileman*, 16 id., 343; *Mason* v. *McNeil*, 23 id., 214, 217; *Walker* v. *Fenner*, 28 id., 367; Clancy H. & W., 1, 2. 3.) If plaintiff's wife obtained possession wrongfully, her conversion was to the use of her husband. (Bacon's Abr., Baron and Femme, L; 2 Saunders, 47; Saunders' Pl. & Ev., 870; Bing. on Cov., 257.) An action would lie by the defendants against both plaintiff and his wife, to recover the same sum which the plaintiff in this action seeks to recover against the defendants. (1 Chitty Pl., 92; 1 Parsons on Cont.; 1 Stephens, N. P., 746; *Holden* v. *Payne*, 27 How. Pr. R., 374; *Solomon* v. *Waas*, 2 Hilton C. P., 179; McQueen's Husb. and Wife, 43

Law Lib. [N. S.], 125, 126, etc.; Reeves' Domestic Rel., 3d ed., Parker's Notes, 148, 149, marg. 72, 73; *Goulding* v. *Davidson,* 26 N. Y., 604; *Tait* v. *Culbertson,* 57 Barb., 9; *Hovey* v. *Starr,* 42 id., 436; *Schaus* v. *Putscher,* 25 How., 463; *Porter* v. *Morant,* 45 Barb., 426; *Ross* v. *Smith,* 55 id., 418; *Valentine* v. *Lloyd,* 4 Abb. [N. S.], 371; *Peak* v. *Lessian,* 1 Lans., 302.) The husband's person and property could be charged in execution. (*Solomon* v. *Waas,* 2 Hilt., 179.) This liability is an answer here. (3 C. & P., 484; 3 Q. B., 310; 9 Exch., 422.) To prevent circuity of action, the law will bar plaintiff's recovery. (Broom's Maxims, marg. p. 309, and cases cited, 5th Am. ed., per Lord DENMAN, Ch. J.; *Walmesbury* v. *Cooper,* 11 A. & E., 221; Lewis' Ch. J., 15 Com. Bench, 62; *Carr* v. *Stephens,* 9 Barn. & Cr., 758; *Simpson* v. *Swan,* 3 Camp., 291, 293; *Turner* v. *Davies,* 2 Williams' Saund. R., 150, note 2; *Xenia Bank* v. *Lee,* 7 Abb., 372; *Brown* v. *Buckingham,* 21 How., 190; *Schubart* v. *Harteau,* 34 Barb., 447; *Briggs* v. *Briggs,* 20 id., 477.) The law of 1862 does not permit the wife to be sued alone for her torts. (*Horton* v. *Payne,* 27 How., 374; *Hasbrouck* v. *Weaver,* 10 J., 247.)

RAPALLO, J. The plaintiff having instructed the defendants not to deliver his bonds to any person, except upon his written order, the delivery of them without such order, even to the plaintiff's wife, did not operate as a discharge of the defendants' obligation to the plaintiff as bailees. (1 Stark, 104.)

The inference of authority on the part of the wife to act as agent for the husband, which, in some cases, may be drawn from circumstances, is negatived in the present instance by the written instructions given by the plaintiff to the defendants.

But, independently of any question of agency, it is claimed on the part of the respondents that because at common law the wife's possession of a chattel was deemed the possession of the husband, the delivery of the bonds to the plaintiff's wife, was equivalent to a delivery of them to the plaintiff.

At common law a married woman could not own personal property. The title to all chattels owned by her at the time of marriage or acquired by her afterward, vested in the husband, and her manual possession of them inured to his benefit. This was the right of the husband, which he could assert. It attached to all property which she rightfully acquired, and to all of which she possessed herself by his authority or with his co-operation. But she had no power to thrust such constructive possession upon him by her own wrong, not sanctioned by him, nor to make him responsible for it against his will and without his knowledge. If she, without his authority, purchased property (not necessaries) he was not responsible for it, though delivered to her, unless it came to his use or some assent on his part was shown. (*Montague* v. *Benedict*, 3 Barn. and Cress., 631; *Bentley* v. *Griffin*, 5 Taunt., 356; *Metcalfe* v. *Shaw*, 3. Camp. R., 22; *Etherington* v. *Parrott*, 1 Salk., 118.)

If the delivery of chattels to the wife was in law a delivery to the husband in all cases, a tradesman need never have been at a loss for a remedy against the husband for goods sold and delivered to his wife, nor put to proof that they came to his use. So of a payment to the wife, of a debt due to the husband. According to the rule as claimed, the delivery of the money to the wife would be a delivery of it to the husband, and he ought not to be permitted to demand payment a second time. But no such effect was given to a payment to the wife. It did not bind the husband unless some authority to her to receive it as his agent appeared. (*Thrasher* v. *Tuttle*, 22 Maine, 335; *Offley* v. *Clay*, 2 Man. and Gr., 172.)

As the delivery of the property to the wife without the assent of the husband would not create a direct liability from him to the party delivering it, it would seem clear that it would not discharge a previously existing liability from such party to her husband.

The cases cited by the counsel for the respondent in illustration of the proposition that the possession of the wife is the possession of the husband, are all cases in which the pos-

session of the wife was lawful, and the husband or his representatives claimed the benefit of it. Those cases hold that the wife cannot acquire title to chattels by adverse possession as against the husband. (*Bell* v. *Bell's Adm'rs*, 1 Ala. Sel. Cases, 465.) That the title to slaves in possession of the wife under a bequest vests in the husband and survives to him, her possession being his. (*Machen* v. *Machen*, 15 Ala., 373; *Walker* v. *Fenner*, 28 Ala., 367.) So of money in possession of the guardian of the wife. (16 Ala., 343.) But in all these cases the wife had acquired a property in the chattels which the law transmitted to the husband. Lord COKE in Co. Litt., 351 *b*, points out this distinction. He says, "As to personal goods there is a diversity worthy of observation between a property in them and a bare possession; and that if personal goods be bailed to a feme, or if she find goods, or if goods come to her hands as executrix to a bailiff, and she taketh a husband, this bare possession is not given to the husband, but the action of detinue must be brought against husband and wife." The husband is, at common law, liable to be sued jointly with his wife for all torts committed by her prior to or during the coverture, and hence, where she has wrongfully taken and converted personal property of another, the action must be against both husband and wife, though he be in fact innocent of any wrong, and never received any part of the property. (Cro. Car., 254; Cro. Jac., 5.) The liability of the husband in such a case does not rest upon the ground that he is in contemplation of law guilty of the taking or conversion, but results from the incapacity of the wife to be sued without her husband. (*Capel* v. *Powell*, 17 C. B. [N. S.], 744.) Where the husband and wife *jointly* took and converted goods, though both were liable for the wrongful act of taking them, the conversion was the act of the husband only, and was to his use only. (*Berry* v. *Nevys*, Cro. Jac., 661; *Keyworth* v. *Hill*, 3 B. & Ald., 685; Bingham on Infancy and Cov., 258; Marshe's Case, 1 Leon., 312; *Rhemes* v. *Humphreys and Wife*, Cro. Car., 254.) A feme with her husband cannot convert to the use of the wife, but all is done

to the use of the husband. (*Perry* v. *Diggs*, Cro. Car., 494.)
And it is said in 2 Saunders, 47, *s, t,* ed. of 1846, that where the
wife before coverture had converted goods, if they remained in
existence, and the husband refused to give them up on demand,
this was a conversion by him for which an action would lie
against him alone. But I apprehend it must be understood in
this statement that the goods had come under the control
of the husband, so that he could deliver them. All the
authorities cited to show that, in actions of trover against hus-
band and wife, the conversion should be alleged to be by
the husband, are cases where the husband and wife have
jointly committed the wrong, or the property has come to
his possession. So much of the cause of action as was
founded upon the acquisition of property by the wrong-doer
was against the husband alone. He could not convert pro-
perty to the use of his wife; but she could aid him in taking
it and enabling him to convert it to his own use. The con-
version was by the husband only and only to his use (Cro.
Jac., 661 ; Cro. Car., 254, 494), and the action for the con-
version might have been brought against the husband alone.
(2 Wm. Saunders, 47, *s* and *t.*) But the action, so far as it is
founded upon the wrong done to the plaintiff by depriving
him of his property, lies against both husband and wife when
both are guilty. Therefore trover may be brought against
husband and wife where she was concerned. (Marshe's Case,
1 Leon., 312.) The conversion in such case is by the hus-
band alone, but the action lies against both, because both
were concerned in the trespass of taking them. (Bingham
on Infancy and Coverture, 257, 258.) In the earlier cases
cited, judgments in actions of trover against husband and
wife for a joint conversion were reversed, because the decla-
ration averred that the conversion was to their uses, instead
of alleging it to the use of the husband ; but in the later case
of *Keyworth* v. *Hill* (3 Barn. & Ald., 685), a declaration
in trover against husband and wife, averring that the defend-
ants converted the property to their own use was held good
after verdict, on the ground that trover would lie for a

temporary conversion by the husband and wife, where no property was acquired by the wrong-doer, as where it was destroyed, or passed over to another, and of this the wife might be guilty as well as the husband, and that after verdict it would be intended that the conversion was of that character.

In all these cases, it will be observed, the husband was alleged to have participated in the wrongful act. But a married woman might alone be guilty of a conversion, and, although the husband was a necessary party to the action, the allegation should be that she converted the property; and in such a case, on writ of error in the Exchequer Chamber, a plea that the defendants were not guilty was held, after verdict, to have tendered an immaterial issue, and that the issue should have been only that the wife was not guilty, and a repleader was ordered. (*Coxe* v. *Cropwell*, Cro. Jac., 5 ; *Slater* v. *Franks*, Hobart, 126.)

I have found no case in which the husband has been held individually liable as upon a conversion by him to his own use, where the property was wrongfully obtained by the wife, and he was not jointly concerned in the taking, or the goods did not actually come to his use. In the present case there was no evidence showing what became of the bonds after their delivery to the plaintiff's wife, or what disposition she made of them. It was not shown that they continued in her possession, or even that they remained in existence. She may have immediately passed them over to another, in which case there was no conversion to his use. (*Keyworth* v. *Hill*, 3 B. & Ald., 685; Cro. Jac., 5.) No facts were proven upon which, if the bonds had been the property of the defendants, an action for their conversion could have been maintained against the husband alone, under any of the authorities cited.

The ancient rules, to which reference has been made, governing actions for goods wrongfully obtained by a married woman, are founded upon the common-law doctrine that a married woman could not acquire or own personal property. How far they are applicable under the existing laws of this

State I have not deemed it necessary to discuss, as I am satisfied that even under the old law the evidence and findings would not establish a conversion of these bonds by the plaintiff, or any liability for them on his part other than that of being joined with his wife in an action for the tort committed by her. It is claimed, however, on behalf of the respondent, that the husband, being liable for the tort committed by his wife in fraudulently obtaining the bonds, he cannot maintain an action founded on such tort.

The unsoundness of this position consists in the assumption that the liability of the husband to be joined with his wife, in an action for her wrong, is equivalent to a guilty participation by him in that wrong, or is founded upon the idea that her act is considered as his. Such is not the nature of his liability. He is not joined as a defendant on the ground that her guilt is imputed to him, but because, so long as the marital relation continues, the wife is incapable of being sued alone (*Capel* v. *Powell*, 17 C. B. [N. S.], 744); and his liability continues only so long as the relation of marriage subsists. (Id.)

In trover against husband and wife for goods converted by the wife, the reason assigned for holding a plea that the defendants were not guilty to be bad, was that "no tort is supposed in the husband, and the issue should be only that she is not guilty." (*Coxe* v. *Cropwell*, Cro. Jac., 5 ; *Slater* v. *Franks*, Hobart, 126.)

If after the commission of a tort by a married woman she should be divorced, or the husband should die, the action could be brought against her alone, and if the death of the husband occurred pending an action against both it would survive against the wife. But if she should die before, or pending the action, it would not survive against the husband.

This could not be if her wrong were imputed to him, or he were in law unqualifiedly responsible for it.

But it is further contended that in this case the wife having obtained the bonds from the defendants by a fraud, and they being entitled to maintain an action against both hus-

band and wife for this wrong, the same facts upon which the plaintiff relies to recover here would charge him in that action for the same amount, and that therefore to prevent circuity of action the law will bar a recovery by him.

We do not think that the present case falls within the principle of avoiding circuity of action to which the respondents refer in support of this claim. Where the circumstances are such that the defendant, if compelled to pay the demand of the plaintiff, would immediately be entitled to recover back from him the identical amount, it is well settled that to avoid circuity of action this cross liability will be allowed to operate as a defence. (*Carr* v. *Stephens*, 9 B. & C., 758; *Simpson* v. *Swan*, 3 Camp., 291; *Cuckson* v. *Stones*, 1 E. & E., 248; *Schloss* v. *Heriot*, 14 C. B. [N. S.], 64.)

But this rule can be invoked only when the parties opposed in interest use the same. (*Walmesley* v. *Cooper*, 11 A. & E., 216.) A covenant by the plaintiff not to sue the defendant may be set up in bar of the action, but a covenant by A. not to sue C. cannot be set up in bar of an action by A. & B. against C. A liability of the plaintiff jointly with another cannot be set up as a bar to a claim due him individually, nor can a conditional or defeasible liability bar one which is absolute and unconditional. A liability of one in a representative capacity cannot be set up against a demand belonging to him in his own right. To bring the case within the common-law rule, the liability of each party must be the equivalent of that of the other. (15 C. B., 62; 16 C. B. [N. S.], 829; 2 H. & Norm., 793; 11 Exch., 831; *Beecham* v. *Smith*, E., B. & E., 442.)

It is very clear that in this case the liability of the plaintiff is very different in its nature and extent from that of the defendants. Their liability to him is absolute and unconditional. Should they die, it would survive against their personal representatives. Should the plaintiff die, it would survive in favor of his, but his cross liability would not survive against his representatives. The liability of the defendants is to the plaintiff alone. That of the plaintiff is only

that of being joined with his wife as defendant, and this only so long as the marital relations continue.   He can in no event be sued alone.   If the wife has any separate estate, or should acquire one with the proceeds of the bonds, the judgment might be enforced against such estate, to the discharge of the husband's.   In case of his wife dying, or being divorced, before judgment, the plaintiff's liability to the defendants would cease while that of the defendants to the plaintiff would continue.   To allow this defence would be equivalent to enforcing a right of action against the husband alone for a tort committed wholly by the wife, which cannot be done.

We think that the evidence offered to prove that the order produced by the defendants was not in a simulated hand-writing was properly rejected.   The plaintiff had not intro-duced any evidence to show that it was in a simulated handwriting, but had testified to the fact that it was not written by him.   It was incumbent upon the defendants to prove that the order was in the handwriting of the plaintiff; and we do not think that, as the evidence stood, the opinion of an expert, that the signature was not in a simulated hand, was competent for the purpose of establishing that it was the plaintiff's.   In the cases cited (3 B. Ch., 325, and 17 Pick., 490), for the purpose of proving that a mark or signature was not genuine, evidence of experts was admitted, to show that the writing was simulated.   The only case cited in which evidence was admitted to show that the writing was not simulated is that of *The People* v. *Hewit* (2 Park, Cr. Rep., 20), where on the trial of an indictment for forgery the prisoner was allowed to prove by an expert that the signature was not in a simulated hand.   Whatever effect might be given to such evidence in a criminal trial for counterfeiting or forgery, as to which we express no opinion, we do not think it competent for the purpose of proving the genuine-ness of a signature against a party sought to be charged thereby.

The judgment appealed from should be reversed, and judgment entered for the plaintiff on the verdict, with costs.

All concur.

Judgment accordingly.