Martin C. Wolf *vs.* Charles O. Keagy and Elizabeth Keagy, his wife.

(*February* 2, 1927.)

RICE and HARRINGTON, J. J., sitting.

*Robert G. Harman* for plaintiff.

*Clarence A. Southerland* and *Philip L. Garrett* for defendants.

Superior Court for New Castle County, No. 100, November Term, 1926.

HARRINGTON, J., delivering the opinion of the court:

Two questions are presented by the demurrer:

1.    Whether the allegation "unlawful and contrary to traffic regulations" in the fourth and eighth counts are sufficiently specific.

2.    Whether the husband, under the Married Women's Statute, now in force in this state, is a proper party in an action against the wife for a voluntary tort committed by her, though in his presence.

The first question is governed by *Thomas v. Grand Trunk Ry. Co.*, 1 *Penn.* 593, 42 *A.* 987.

■■    Under the rule announced in that case, where a foreign statute is relied on, it must be specifically pleaded, and this court will not take judicial notice of its provisions.

In the language of the court in that case:

"It is not enough to allege a violation of such a law and to state because of the violation so alleged, that certain proceedings were instituted * * * without setting out the statute, in order that the court may see whether the proceedings were warranted or not."

The fourth and eighth counts are, therefore, bad because of their failure to set forth the statutory provision relied on. See, also, *Daniels v. P. & R. Ry. Co.*, 3 *Boyce* (26 *Del.*) 286, 83 *A.* 19. Any other conclusion would be inconsistent with the general rule that the declaration must fairly inform the defendant of what he must be prepared to meet at the trial.

The remaining question is a more difficult one. Each count of the declaration, among other things, alleged "the said defendants who were riding in their automobile (driven by the said Elizabeth Keagy, using her free and unrestrained will and judgment, both of which were acquiesced in by the said Charles O. Keagy"), etc.

Read in connection with the other allegations of each count, the language used, therefore, set out a case of a voluntary negligent act committed by the wife in the presence of the husband with respect to the use of their property; and following the common-law rule the suit is against both husband and wife. The defendants contended that a husband and wife could not now be sued jointly in this state for the voluntary torts of the wife, and therefore demurred to the declaration for misjoinder.

It is not denied that if several persons be made defendants jointly, where the tort could not in point of law be joint, they may demur. 1 *Chitty on Plead. p.* 74.

The decision of the question raised depends upon the construction and effect of the Married Women's Act of this state, and particularly of *Chapter* 197, *vol.* 30, *Laws of Delaware*, passed in 1919.

This *Section* (3048) provides:

"That the property of a married woman, whether real, personal or mixed, and choses in action which she may have acquired in any manner, and all the income, rents and profits thereof, shall be deemed to be her sole and separate property and she may sell, convey, assign, transfer, devise, bequeath, encumber or otherwise dispose of the same, and she may contract jointly (including with her husband) or separately, sue and be sued, and exercise all other rights and powers, including the power to make a will, which a *feme sole* may do under the laws of this state," etc.

At common law, the husband alone was undoubtedly liable for the negligent and other tortious acts of the wife committed during coverture, if such acts were done under his coercion or direction. 13 *R. C. L. Husband and Wife,* §§ 258, 265; 9 *Ann. Cas.* 1228; 3 *Kent's Com.* 149; *Schouler on Marriage, Divorce, Separation and Domestic Relations,* § 122.

. There was, also, a presumption of coercion if such acts were committed in the presence of the husband. 9 *Am. & Eng. Ency. of Law* (2d Ed.) 824; 13 *R. C. L. "Husband and Wife,"* § 258; 9 *Ann. Cas.* 1228; 92 *Am. St. Rep.* 165; *Schouler on Marriage, Divorce, Separation and Domestic Relations,* § 123.

By the better rule, however, this was a mere presumption of fact and could be rebutted by the evidence. 9 *Ann. Cas.* 1229; 13 *R. C. L. "Husband and Wife,"* § 258; *Schouler on Domestic Relations,* § 75, p. 115; 9 *Am. & Eng. Ency. of Law* (2d Ed.) 824; *Babbitt on Motor Vehicles,* § 1195.

Where it, therefore, appeared that the wife was not acting under the coercion or direction of her husband, she was liable for her acts—not growing out of contracts—but must have been sued jointly with her husband. *Plotkin v. Plotkin,* 2 *W. W. Harr.* (32 *Del.*) 455, 125 *A.* 455; *Dicey on Parties to Actions, rule* 107; *Black's Law and Practice in Accident Cases,* 164; 13 *R. C. L. "Husband and Wife,"* §§ 255, 272; *Schouler on Marriage, Divorce, Separation and Domestic Relations,* §§ 125, 129.

This rule is sometimes stated in this manner:

"If the tort is committed in his (the husband's) presence, and she (the wife) appears to have acted deliberately and freely, it is their joint tort." 9 *A. & E. Ency. of Law* (2 Ed.) 824.

While the husband, under such circumstances, was a necessary joint defendant with the wife, his liability was merely by reason of the marriage relation and ceased at the death of either of them before judgment, even though an action was then pending against both. *Knowing v. Manly,* 49 *N. Y.* 192, 10 *Am. Rep.* 346; 16 *Ann. Cas.* 379; 13 *R. C. L. "Husband and Wife,"* §§ 264 to 267; *Schouler, supra,* § 125. See, also, *Day v. Messick,* 1 *Houst.* 328.

. According to the better view, the same rule applied in case of

divorce. 9 *Ann. Cas.* 1228; 13 *R. C. L. "Husband and Wife,"* §§ 264, 267. It did not apply, however, where the wife was living separate and apart from her husband. *Schouler on Marriage, Divorce, Separation and Domestic Relations,* § 125; 13 *R. C. L. "Husband and Wife,"* § 264; *Head v. Briscoe,* 5 *Carr. & P.* 484; *Cuenod v. Leslie,* [1909] 1 *K. B.* 880, 16 *Ann. Cas.* 375.

It has, also, been held that a judgment against both husband and wife for the voluntary tort of the wife could be collected from the separate property of the wife. *Knowing v. Manly,* 49 *N. Y.* 192, 10 *Am. Rep.* 346; 13 *R. C. L. "Husband and Wife,"* § 255.

This is probably true because of its being a joint judgment. However that may be, that the responsibility of the husband for the voluntary torts of the wife at common law, was merely in a restricted sense and not as though he had actually committed the acts charged against her, is clear.

We have already in effect stated that the remedy against the wife alone, for her torts, was suspended during the continuance of the marriage. Conversely where a married woman suffered damage by reason of a tortious act committed by another, while she had a right of action, by reason of the disabilities arising from the marriage relation, she alone had no remedy, at least if her coverture was pleaded in abatement. *Weldon v. Winslow,* [1884] 13 *Q. B.* 784, 786. If suit was brought during the marriage, her husband was, therefore, a necessary party plaintiff with her. *Eliason v. Draper,* 2 *Boyce* (25 *Del.*) 1, 77 *A.* 572; *Wood v. Vernon,* 8 *Houst.* 48, 12 *A.* 656; *Plotkin v. Plotkin,* 2 *W. W. Harr.* (32 *Del.*) 455, 125 *A.* 455; *Louth v. Thompson,* 1 *Penn.* 149, 39 *A.* 1100.

While there were cases where there was no remedy, whatever, because the husband by reason of his participation in the tort, constituting the cause of action, could not be a party plaintiff, they need not be considered here. *Eliason v. Draper, supra; Wood v. Vernon, supra.*

With certain exceptions, depending to some extent upon the character of the offense, there was, also, a presumption of the common law that the acts of the wife committed with the participation of, or in the presence of the husband were committed under

his direction or coercion and he was criminally liable therefor. 13 *R. C. L. "Husband and Wife,"* §§ 275, 277-289; *State v. McDaniel, Houst. Cr. Cas.*, 506 (1877). As in civil cases, the presumption, with respect to the responsibility of the husband, could be rebutted by the evidence. Where he did not participate in any way in the acts of the wife and they were not committed in his presence, there was not only no presumption of guilt on his part, but no criminal responsibility, whatever, for such acts.

While the reason does not clearly appear, this court, without any statutory provision to that effect, in *State v. Clark* (1891), 9 *Houst.* 536, 33 *A.* 310, apparently refused to apply the common-law rule with respect to the responsibility of the husband for the offenses of the wife, in an indictment for conspiring to burn a barn.

Various reasons have been given for the limited civil responsibility of the husband for the voluntary torts of the wife at common law.

In addition to the unity between husband and wife, some cases base it on a responsibility for the acts of the wife because of the husband's right to correct her; others, on the ground that the personal property of the wife, when reduced to his possession, belonged absolutely to the husband, and that he was, also, entitled to the rents from her real property; still others base it on the ground that as the wife could not be sued alone a person injured by her acts would have no redress, whatever, unless her husband was liable with her. *Knowing v. Manly*, 49 *N. Y.* 192, 10 *Am.Rep.* 346; *Capel v. Powell*, 17 *C. B.* (*N. S.*) 744; *Cuenod v. Leslie* [1909], 1 *K. B.* 880; 16 *Ann. Cas.* 375; 13 *R. C. L. "Husband and Wife,"* § 264; 10 *Am. Rep.* 346; 16 *Ann. Cas.* 375; 92 *Am. St. Rep.* 166; 131 *Am. St. Rep.* 144; 9 *Ann. Cas.* 1226; *Schouler on Marriage, Divorce, Separation and Domestic Relations*, § 125.

The last reason seems to be the one most frequently adopted by the courts.

The plaintiff contended that statutes of this character were in derogation of the common law, must always be strictly construed, and do not abrogate the common-law rules any further than the clear import of the language used requires. He, therefore,

contended that the old rule requiring a joint action against the husband and wife for the voluntary torts of the wife still applied in this state.

The defendant, while admitting that there was no express statutory provision relieving the husband from responsibility for the torts of the wife, contended that the old common law rule did not apply: (1) Because the tortious act charged was with respect to the use and management of the wife's separate property; (2) because the reason for the old rule had been removed by statute.

As a general rule, the contention of the plaintiff, as to the construction of statutory provisions in derogation of the common law, is correct (13 *R. C. L. "Husband and Wife"*, § 268; 15 *Am. Ency. of Law* [2d Ed.] 896; *Eliason v. Draper*, 2 *Boyce* [25 *Del.*] 4, 77 *A.* 572; *Masten v. Herring*, 6 *Penn.* 285, 66 *A.* 368; *Vincent v. Ireland*, 2 *Penn.* 582, 49 *A.* 172), though the rule does not apply with the same strictness where the particular provisions relied on are remedial in character (*Valentine v. Tantum*, 7 *Houst.* 402, 32 *A.* 531; *Heitz v. Sayers*, 2 *W. W. Harr.* [32 *Del.*] 207, 121 *A.* 225; *Plotkin v. Plotkin*, 2 *W. W. Harr.* [32 *Del.*] 455, 125 *A.* 455).

But this rule does not control this case.

Before considering the act of 1919 above quoted, it may not be improper to review briefly the legislation in this state with respect to married women prior to that date.

*Chapter 76 of the Revised Code of* 1852 merely contained a provision allowing a married woman to secure insurance for her sole use on the life of her husband and made such insurance free from the claims of his creditors.

The Act of March 17, 1865 (*Volume* 12, *Laws of Delaware, c.* 572), was, however, the beginning of a series of more comprehensive legislative acts for the benefit of married women. It provided that the real estate, mortgages, stocks and silver plate of a married woman should remain her sole and separate property and should not be liable for the debts of her husband, except as to judgments recovered against the husband for debts created by

her before the marriage. It contained a *proviso*, however, prohibiting the wife from disposing of or mortgaging such property without the consent of her husband.

The Act of March 23, 1871 (*Volume* 14, *Laws of Delaware, c.* 80), gave certain additional powers to a married woman living separate and apart from her husband, and not supported by him. It provided that her property, which had been kept separate from and could be distinguished from that of her husband, should not be deemed his property or taken for his debts, but that it might be taken for debts and liabilities contracted by her while living apart from her husband; that for the recovery of such debts she might, while the separation continued, be sued as a single woman, and might sue in her own name and for her own use for debts contracted and liabilities incurred to her.

The same act further provided that the husband, if the separation was without fault on his part, should not be liable for the debts of the wife contracted or incurred while she was living apart from him, but it made him liable for all such debts in case they should again cohabit.

This act was amended by the Act of April 16, 1885 (*Volume* 17, *Laws of Delaware, c.* 611). This amendment also empowered a wife living separate and apart from her husband to sue for the redress of her personal wrongs, torts, or private injuries.

The Act of April 9, 1873 (*Volume* 14, *Laws of Delaware, c.* 550), materially increased the rights and privileges of married women. It provided that all real and personal property of a married woman, except that acquired from her husband, should be her sole and separate property; that she might prosecute and defend suits at law or in equity for the preservation and protection of such property as if unmarried, or she might do it jointly with her husband, but that he alone could not maintain an action with respect thereto; that she might, also, make contracts with respect to her separate property and maintain suits thereon, as though she were a *feme sole*; that she might receive the wages of her personal labor, not performed for her family, and maintain an action therefor in her own name; that she might, with the written con-

sent of her husband, dispose of her property by will; that all debts contracted before marriage by the wife or by her authority after marriage should be a charge on her real and personal property and that a judgment therefor might be recovered against her in her own name.

This statute was amended by the Act of March 17, 1875 (*Volume* 15, *Laws of Delaware, c.* 165), by providing that a married woman might act as executrix or administratrix without any responsibility on the part of her husband, and that in case of purchase of real estate by her she might, in her own name, secure the purchase money by recognizance, bond, mortgage, as a single woman might, and without any liability on the part of her husband.

While this act was further amended by the Acts of March 22, 1877 (*Volume* 15, *Laws of Delaware, c.* 464), February 27, 1879 (*Volume* 16, *Laws of Delaware, c.* 126), and March 14, 1901 (*Volume* 22, *Laws of Delaware, c.* 203), such amendments were unimportant to the consideration of this case.

The Act of April 11, 1893 (*Volume* 19, *Laws of Delaware, c.* 772), provided for conveyances of real estate by a married woman abandoned by her husband. The result of all of the legislation above referred to was embodied in *Chapter* 87, *Revised Code* 1915, Art. 2, being *Code Sections* 3047 to 3060, inclusive.

*Section* 4712, *Revised Code* 1915, also, provides severe penalties for the use of any physical violence by the husband toward the wife.

Numerous reported cases have considered the various provisions of these statutes. None of them are, however, conclusive of the question before us, though *Hatton v. Wilmington City Ry. Co.*, 3 *Penn.* 159, 50 *A.* 633, *Eliason v. Draper*, 2 *Boyce* (25 *Del.*) 1, 77 *A.* 572, and *Lupton v. Underwood*, 3 *Boyce* (26 *Del.*) 519, 85 *A.* 965, were all tort actions by married women suing without their husbands, either for personal injuries or for the alienation of their husband's affections, and all were based wholly, or in part, on the Act of April 9, 1873.

This act provided that a married woman might prosecute or defend suits at law for the preservation and protection of her own property, as if unmarried. In the above cases, while personal rights alone were violated, they were treated as property rights within the meaning of the statute above quoted. *Eliason v. Draper* was, also, based in part on the act of 1871, as amended by the act of 1885.

The court in that case called attention to the fact that the tendency of modern legislation was to put the husband and wife upon exact quality with respect to the enforecement at law of the rights of person and property and to emancipate the wife from her common-law disabilities. That a married woman under these statutes had the sole control and management of her own property, both real and personal, and the right in general to sue and be sued with respect thereto, is clear. *Heitz v. Sayers*, 2 *W. W. Harr.* (32 *Del.*) 207, 121 *A.* 225. See, also, *Plotkin v. ·Plotkin*, 2 *W. W. Harr.* (32 *Del.*) 455, 125 *A.* 455. Under such circumstances, her husband was not responsible for any voluntary tortious acts committed by her growing out of such management. *Rowe v. Smith*, 45 *N. Y.* 230; *Quilty v. Beattie*, 135 *N. Y.* 201, 32 *N. E.* 47, 17 *L. R. A.* 521; *Harrington v. Jagmetty*, 83 *N. J. Law* 548, 83 *A.* 880; *Wolff v. Lozier*, 68 *N. J. Law* 103, 52 *A.* 303; *Henley v. Wilson*, 137 *Cal.* 273, 70 *P.* 21, 58 *L. R. A.* 941, 92 *Am. St. Rep.* 160; *Boutell v. Shellaberger*, 264 *Mo.* 70, 174 *S. W.* 384, *L. R. A.* 1915D, 847; *Foster v. Ingle*, 147 *Tenn.* 217, 246 *S. W.* 530, 27 *A. L. R.* 1214; 13 *R. C. L.* "*Husband and Wife*," § 269; 131 *Am. St. Rep.* 157; 14 *L. R. A.* (*N. S.*) 1003; *L. R. A.* 1915A, 493; 9 *Ann. Cas.* 1229; *Schouler on Marriage, Divorce, Separation and Domestic Relations*, § 130; 15 *A. & E. Ency. Law* (2d Ed.) 896.

In *Rowe v. Smith, supra*, the New York statute provided that:

" 'Any married woman may, while married, sue and be sued, in all matters having relation to her sole and separate property, * * * in the same manner as if she were sole.' " *Laws* 1860, *c.* 90, § 8.

In construing this statute, the court said:

"To make the husband liable, when all control of the property has been taken from him, would not accord with the principle upon which his liability for the torts of the wife is founded."

In *Harrington v. Jagmetty, supra,* the court, also, said:

"Whatever may have been the consequence of the necessary joinder of husband and wife, in an action for a tort committed by the wife before the passage of the statutes relating to married women, since the passage of those acts, the husband is not liable for the torts of his wife, growing out of the conduct by her, of her own business, or rising from the management by her of her own separate property."

But the act of 1919 is broader in its scope than either the act of 1871, as amended in 1885, or the act of 1873. *Heitz v. Sayers,* 2 *W. W. Harr.* (*32 Del.*) 207, 121 *A.* 225. See, also, *Plotkin v. Plotkin,* 2 *W. W. Harr.* (*32 Del.*) 455, 125 A. 455.

It not only provides that "the property of a married woman, * * * " no matter how acquired "shall be deemed to be her sole and separate property, * * * " but it, also, provides that "she may contract jointly (including with her husband) or separately, sue and be sued, and exercise all other rights and powers; * * * which a *feme sole* may do under the laws of this state."

Subject to whatever limitations there may be in cases of contracts and suits between husbands and wives (*Plotkin v. Plotkin,* 2 *W. W. Harr.* (*32 Del.*) 455, 125 *A.* 455), a married woman's right to contract and to sue and be sued is, therefore, general, and is not confined to her own property; that she may sue or be sued either in contract or in tort with respect thereto is, therefore, clear.

The declaration alleged that the defendant Elizabeth Keagy was driving "their automobile." While her interest in such automobile did not appear, the statute above referred to clearly includes an interest in property as well as that in which the wife is the sole owner. *Heitz v. Sayers,* 2 *W. W. Harr.* (*32 Del.*) 207, 121 *A.* 225. That being true, the cases above cited govern this case, and it was neither necessary nor proper to have joined the husband as a defendant in this action.

But another principle is, also, applicable to this case. It has appeared that both the person and property of a married woman have been almost entirely emancipated from the common-law control and restrictions growing out of the marriage relation. That

the reasons for the former lack of legal remedies against her alone during the marriage no longer exist is, therefore, apparent.

That being true, while the statute of 1919 does not in express terms provide that a married woman may be sued alone for the torts committed by her, such is the necessary implication from the broad language of the act giving her the right in general to sue and be sued as a *feme sole*. That Charles O. Keagy, husband of the said Elizabeth Keagy, was not a proper party defendant in this action is, therefore, clear. *Martin v Robson*, 65 *Ill.* 129, 16 *Am. Rep.* 578; *Harris v. Webster*, 58 *N. H.* 481; *Smith v. Machesney*, 238 *Pa.* 538, 86 *A.* 493; *Crouse v. Lubin*, 260 *Pa.* 329, 103 *A.* 725; *Gustine v. Westenberger*, 224 *Pa.* 455, 73 *A.* 913. See, also, *Lane v. Bryant*, 100 *Ky.* 138, 37 *S. W.* 584, 36 *L. R. A.* 709; *Norris v. Corkill*, 32 *Kan.* 409, 4 *P.* 862, 49 *Am. Rep.* 489.

For the reasons above given, the demurrer is sustained as to each count of the plaintiff's declaration.

Note.—When this case was argued, the attention of the Court was not called to *Chapter* 228, *Volume* 34, *Laws of Delaware*, which provides:

"For all civil injuries committed by a married woman damages may be recovered against her alone, and her husband shall not be responsible therefor, except in cases where, under the law, he would be jointly responsible with her, if the marriage did not exist."