129 P.2d 56

In re GOSSETT'S ESTATE.

GALLUP v. BAILEY et al.

No. 4700.

Supreme Court of New Mexico.

Aug. 18, 1942.

Rehearing Denied Sept. 22, 1942.

Barker & Remley, of Santa Fe, for appellants.

M. P. Gutierrez, Anthony J. Albert, and Charles B. Barker, all of Santa Fe, for appellee.

BRICE, Chief Justice.

The question is whether the word child includes in its meaning an illegitimate child, as that word appears in the following statute hereafter referred to as the pretermission statute:

"If any person make his last will and die, leaving a child or children, or descendants of such child or children, in case of their death, not named or provided for in such will, although born after the making of such will, every such testator, so far as shall regard such child or children, or their descendants not provided for, shall be deemed to die intestate; and such child or children, or their descendants, shall be en-

titled to such proportion of the estate of the testator, real and personal, as if he had died intestate; and the same shall be assigned to them, and all the other heirs, devisees, and legatees shall refund their proportional part." § 154-112, N.M.Sts.1929.

■ This question was raised by appellants' demurrer to the appellee's complaint, in which it was alleged in substance that appellee Arthur Gallup, a minor, was the illegitimate son of Arthur H. Gossett, deceased, who died testate, leaving as his legatees and devisees in a purported last will and testament, the appellants Alex E. Gossett and Elizabeth Gossett. That appellee was not named or provided for in the deceased's will; that appellee had been recognized by the deceased Gossett as his child, and that such recognition was general and notorious; that he had been recognized as deceased's child in certain writings signed in the presence of two witnesses, which showed upon their faces that they were signed with the intent of recognizing appellee as the heir of the deceased Gossett. It was stated that by reason of the alleged facts such will was void as to appellee, who was the only heir at law of the deceased. These facts (not the conclusion) were admitted by the demurrer, which the court overruled. Appellants stood upon their demurrer. The court entered judgment for the appellee upon an ex parte hearing.

In State v. Chavez, 42 N.M. 569, 82 P.2d 900, 905, in which the right of an illegitimate child of an illegitimate mother to inherit from his maternal illegitimate uncle was in question, we stated:

"Our statutes, and those of Iowa and Kansas, do not provide in terms that an illegitimate child shall inherit from his mother 'the same as if he were legitimate,' or, 'as if lawfully begotten,' as do those of a number of states. But how else could he inherit? There is no specific provision for the manner of his inheriting property from his mother or the portion, and if not as a child as provided by the general statutes of descent and distribution, then the statute is too indefinite and uncertain to be the law. When construed with the other sections of the act quoted, it is certain that the legislature meant that an illegitimate child should inherit from his mother as other children mentioned in the act should inherit; that is 'as if lawfully begotten,' otherwise the statute is meaningless, and we so hold."

The statutes then being construed were as follows:

"If the intestate leave no issue, the whole of his estate shall go to his wife; if he leaves no wife, the portion which would have gone to her shall go to his parents. If one of his parents be dead, the portion which would have gone to such deceased parent, shall go to the surviving parent." § 38-109, N.M.Sts.1929.

"If both parents be dead, the portion which would have fallen to their share, by the above rule, shall be disposed of in the

same manner as if they had outlived the intestate, and died in the possession and ownership of the portion thus falling to their share; and so on through the ascending ancestors and their issue." § 38-110, N.M.Sts.1929.

"Illegitimate children shall inherit from the mother and the mother from the children; they shall inherit from the father whenever they have been recognized by him as his children, but such recognition must have been general and notorious, or else in writing, and if such recognition be in writing it must have been signed by the reputed father in the presence of at least two competent witnesses and must be such as to show upon its face that it was so signed with the intent of recognizing such children as heirs." § 38-114, N.M.Sts.1929.

"Under such circumstances, if the recognition of relationship has been mutual, the father may inherit from his illegitimate children, but in thus inheriting from an illegitimate child, the mother and her heirs take preference of the father and his heirs." § 38-115, N.M.Sts.1929.

We further stated that while the above statutes were in derogation of the common law that they were remedial and should be liberally construed "if in fact the proper rules for the construction * * * have any relation to the common law"; we held that the rule which holds that illegitimate children have no inheritable blood is a fiction of the common law, and has no application to the New Mexico statutes of descent and distribution, which are of civil law origin.

These statutes were adopted almost verbatim from the laws of Kansas, and Kansas adopted them from Iowa. The courts of these states are authority for our conclusion in the Chavez case that an illegitimate child is a child of the mother in the sense the word is used in the statutes of descent and distribution, the pertinent parts of which we have quoted.

At the common law an illegitimate child, so far as inheritance was concerned, was nullius filius (a child of nobody). He had no inheritable blood. He was cut off completely from his ancestors, including his father and mother. This fiction of the common law is the basis for appellant's contention that the word "child" as used in the pretermission statute means a legitimate child only.

We start with our conclusion in State v. Chavez, supra, that the word "child" as used in the descent and distribution statutes of New Mexico, includes an illegitimate child of his mother; and by the same reasoning we hold that it includes an illegitimate child who has been recognized by his father as his child, as required by § 38-114, N.M.Sts.1929, supra, to constitute him an heir of his father.

The general statutes of New Mexico providing for the descent and distribution of estates were adopted in 1889 from the laws of Kansas, and the pretermission statute was adopted in 1901 from the laws

of Missouri. The subject of all these statutes is the descent of the property of decedents. They are in pari materia and should be construed together (Foster v. Lee, 172 Ala. 32, 55 So. 125, Ann.Cas.1913C, 1335; Morin v. Holliday, 39 Ind.App. 201, 77 N. E. 861; Martin v. Claxton, 308 Mo. 314, 274 S.W. 77; Commissioner of Immigration v. Gottlieb, 265 U.S. 310, 44 S.Ct. 528, 68 L. Ed. 1031; Black on Interpretation of Laws § 103; Kemp Lbr. Co. v. Howard, 8 Cir., 237 F. 574), and when so construed it is clear that the word "child" in the pretermission statute includes any child that would inherit from an intestate parent.

The common law regarding an illegitimate child is: "A bastard cannot be an heir to anyone neither can he have heirs but of his own body, for being a nullius filius he is therefore a kin of nobody and has no ancestor from whom any inheritable blood can be derived." 1 Blackstone's Commentaries, p. 459.

When the pretermission statute was enacted in 1901 an illegitimate child having the statutory recognition of his father (in the absence of legitimate children) was just as much his child within the meaning of the descent statutes as one born in lawful wedlock. State v. Chavez, supra. And since the amendment of 1915, § 1, Ch. 69, L. 1915, § 38-114, Sts.1929, supra, such child has all the rights of inheritance of a legitimate child.

It is obvious that the common law rule stated is not in force in this state. The blood of appellee's father flows in his veins,

and that blood is inheritable, and he is in law and in fact his father's child.

As the pretermission statute provides. that a child not named or provided for in a will is entitled to the same proportion of the estate of the testator as if he had died intestate, and appellee is a child who would have been entitled to the estate if his father had died intestate, he is a "child" within the meaning of the statute, and the will is void as to him.

Our conclusion is not only supported by reason but by authority. The Supreme Court of Missouri, from which state the pretermission statute comes to us, passed upon the question in Martin v. Claxton, supra.

A Missouri statute provides: "Bastards. shall be capable of inheriting and transmitting inheritance on the part of their mother, and such mother may inherit from her bastard child or children, in like manner as. if they had been lawfully begotten of her." Mo.R.S.A. § 314. The question was whether an illegitimate child was a child within. the meaning of the pretermission statute and therefore could inherit regardless of the will. The Supreme Court of Missouri. [308 Mo. 314, 274 S.W. 79] stated:

"I see no immoral principle which would. or should prevent them inheriting their parents' estates. But, be that as it may, it. was clearly the design of the Legislature by the enactment of section 311, R.S.1919' [Mo.R.S.A. § 314], to abrogate the common-law rule as to illegitimate children's right to inherit property from their mother, and.

give to them that right; also to the mother the right to inherit from them. That being so, the statute is clearly remedial, and must therefore be liberally construed, as all such statutes must be.

"There is no question but what the language of this statute is broad enough to include the plaintiff as an heir in this case. Therefore she should recover in this case as the heir of her deceased mother. But counsel for respondent meet that contention by saying that the word 'child' or 'children,' as used in said section 311, construed with section 514 [Mo.R.S.A. § 526], means only legitimate children, or children born in lawful wedlock, and not a bastard, or illegitimate child, and that an illegitimate child has no interest in the estate of its mother, who dies testate without mentioning such child in her will.

"They reach this conclusion by saying that at common law a bastard was not a person, he or she is nobody, and therefore is not considered a child within the meaning of the law, and consequently could not inherit (which unquestionably is true), and that statute being in derogation of the common law, it must be strictly construed. In my opinion counsel for respondent is in error in this contention, for the reason that the statute was clearly enacted in favor of humanity, and almost all such statutes, with but few exceptions, must be liberally construed, in order to give the unfortunate children the benefit of the statute. Otherwise, why was the statute enacted?

"Section 311 expressly provides that illegitimate children shall be capable of inheriting from their mother in like manner as if they had been lawfully begotten. So we see by this statute the illegitimate and legitimate children are placed upon the same and equal footing, in so far as their rights of inheriting property from their mother is concerned; consequently we must construe sections 311 and 514 together, and, when so done, the latter section does not exclude nullius filius or nulla filia, but includes illegitimate children, just as well as legitimate children. This is the clear and unambiguous meaning of the two statutes, when construed together, which must be done."

The laws of Iowa and New Mexico, regarding the right of illegitimates to inherit property, are practically identical. A statute of Iowa provides, " * * * no devise or bequest * * * to a corporation organized under the chapter relating to corporations not for pecuniary profit, or to a foreign corporation of a similar character, shall be valid in excess of one-fourth of the testator's estate after payment of debts, if a spouse, child or parent survive the testator." Code, § 3270. These statutes were construed in the case of Hastings v. Rathbone, 194 Iowa 177, 188 N.W. 960, 962, 23 A.L.R. 392.

George W. Hastings died testate. By the terms of his will he provided for the payment of his debts, and gave legacies of $3,-000 each to four nieces and nephews. He

devised and bequeathed the residue of his estate to the Christian Home, which was incorporated under the laws of Iowa relating to corporations not for pecuniary profit. The question was whether an illegitimate son who had received the statutory recognition which entitled him to inherit from Hastings, as his child, was a child within the meaning of this statute.

It will be seen that the questions are identical, as was the defense. The court said:

"Granting then that the appellee is the illegitimate son of the testator, we are at once confronted with the question as to whether or not he is in legal significance a 'child' of said testator, within the meaning of section 3270 of the Code. The limitation in said section provides that no devise or bequest to a corporation not for pecuniary profit shall be valid in excess of one-fourth of the testator's estate after payment of debts, if parent, spouse, or child survive the testator.

"It must be conceded that under the common law an illegitimate offspring was not a 'child' within the contemplation of the law, and could not inherit from its father. Such is still the law of England and of a number of our states. * * *

"What is the purpose and intent of this statute? It has direct and immediate reference to the disposition of the estate of a decedent as affecting those who otherwise would inherit it. If a decedent dies intestate, his property goes to his surviving wife, if any, and to his 'children,' under the general law of descent and distribution. Under this statute, the word 'children' includes a duly recognized illegitimate child. Shall it be held that the word 'child' in the section of the statute referring to the distribution of property by a testator does not also include a duly recognized illegitimate child? That is the question. No good reason can be suggested why the Legislature in enacting these statutes intended to make a distinction between the use of the word 'child' in referring to the estates of those who died intestate and the same word in referring to the estates of those who execute a will. Both statutes have to do with the same subject-matter, to wit, the distribution of the property of a decedent. We think it would be doing violence to the legislative intent to hold that in one of these statutes the word 'child' does include a duly recognized illegitimate child, but that in the other statute it does not. There is exactly the same reason why the word 'child' should mean the same where the ancestor dies testate as where he dies intestate. No good reason whatever has been or can be suggested for a distinction in the use of the word in these two statutes. They both pertain to the same general subject-matters; and should be construed in the same general way."

The opinion holds that the word "child" as used in the statute regarding the descent of the property of an intestate includes illegitimate children when recognized as provided by law, and that the word "child" as used in the pretermission statute of Iowa also meant a child who would

be entitled to inherit if decedent had died intestate. See, also, Heath v. White, 5 Conn. 228; Foster v. Lee, supra; Morin v. Holliday, supra; Smith v. Smith, 105 Kan. 294, 182 P. 538; Swanson v. Swanson, 2 Swan.,Tenn., 446; Wadsworth v. Brigham, 125 Or. 428, 259 P. 299, 266 P. 875; Bennett v. Toler, 15 Grat.,Va., 588, 78 Am.Dec. 638.

■ The appellee was a child of the deceased Gossett in the sense that word is used in the pretermission statute. He was not named or provided for in Gossett's will. It must be held, therefore, that Gossett died intestate and that appellee, being his only heir at law, is entitled to all of his estate.

The Judgment of the District Court is affirmed.

It is so ordered.

SADLER, MABRY, and BICKLEY, JJ., concur.

ZINN, J., being absent, did not participate.

On Motion for Rehearing.

BRICE, Chief Justice.

Upon motion for rehearing it is said by appellants that we erred in holding that the statutes in question should be liberally construed, in that they are in derogation of the common law.

■ Where a statute is both remedial and in derogation of the common law it is usual to construe strictly the question of whether it does modify the common law, but its application should be liberally construed. Archer v. Equitable Loan Assurance Society, 218 N.Y. 18, 112 N.E. 433; Ex parte Dexter, 93 Vt. 304, 107 A. 134; Chicago, B. & Q. R. Ry. Co. v. Dunn, 52 Ill. 260, 4 Am.Rep. 606; Wolf v. Keagy, Del., 3 W.W.Harr. 362, 136 A. 520; Stem v. Nashville Interurban Ry., 142 Tenn. 494, 221 S.W. 192; Robinson v. Harmon, 157 Mich. 276, 122 N.W. 106.

"There are three points to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy; that is, how the common law stood at the making of the act; what the mischief was, for which the common law did not provide; and what remedy the parliament hath provided to cure this mischief. And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy." 1 Cooley's Blackstone, p. 86.

■ There is no merit in the contention that the so-called Bastardy Act (Sections 22-201 to 22-227 inclusive, Comp.Sts.1929) "fixes the sole and full measure and limit of that which by operation of law may be enforced against or recovered from the estate of a father who has recognized his illegitimate child as an heir." The bastardy statutes have reference to the duties the father owes to his illegitimate child regarding support and maintenance after its paternity has been determined judicially, or by acknowledgement by the putative father in writing, or by the part performance of his obligation to support such child. It has no application to the descent and distribu-

352

tion and inheritance of estates; in which case the writing must be made for the purpose of recognizing the child as an heir, but this is not so as to the Bastardy Act. The respective statutes do not have reference to the same subject of legislation.

We adhere to our original opinion.

It is so ordered.

SADLER, MABRY, and BICKLEY, JJ., concur.

ZINN, J., not participating.